ROBERT HAUGHTON v. WILLIAM C. BUSCH.                101    267
e127    541

*Logging contract—Common-law lien—Trover—Part performance of
contract—Quantum meruit.*

1. One who performs labor in cutting, hauling, and driving logs
   for another, under a contract which gives him the right to
   retain possession of the logs until he is paid for his services,
   has a common-law lien on the logs for such services.

2. Where logs upon which a contractor has a common-law lien
   are taken from his possession by the general owner without
   his permission, trover is an appropriate remedy for the wrong
   done.

3. The modern doctrine that, even where one has failed to comply
   with the terms of his contract, he may recover, upon a
   *quantum meruit,* the value of his services, less such damages
   as the other party may show have been occasioned by his
   breach, cannot be extended so as to entitle a contractor to
   maintain a common-law lien upon logs in his possession under
   a contract for the cutting, hauling, and driving of the same,
   when he has failed to comply substantially with the terms of
   his contract.

Error to Marquette.   (Stone, J.)   Argued May 2, 1894.
Decided June 26, 1894.

Trover.   Defendant brings error.   Reversed.   The facts
are stated in the opinion.

*F. O. Clark,* for appellant, contended:

1. The rules of the common law are not to be changed by doubt-
   ful implication; citing *Meek v. Pierce,* 19 Wis. 303; and at com-
   mon law laborers engaged in cutting, hauling, and driving
   timber had no lien thereon; citing Jones, Liens, § 702; *Oakes
   v. Moore,* 24 Me. 214; *Oliver v. Woodman,* 66 Id. 54; *Arians
   v. Brickley,* 65 Wis. 26.

2. There can be no lien without a continuous possession; citing
   Story, Ag. § 361; *Jarvis v. Rogers,* 15 Mass. 389; *Randel v.
   Brown,* 2 How. 416; *Danforth v. Pratt,* 42 Me. 50; *Stevens v.
   Faucet,* 24 Ill. 483; *Bailey v. Quint,* 22 Vt. 474; *Colwell v. Iron*

*Co.*, 36 Mich. 51; *Bank v. Lumber Co.*, 91 Id. 342; and a lien of an artisan upon an article manufactured by him is lost by a voluntary abandonment of the possession of the property; citing *King v. Canal Co.*, 11 Cush. 231; *McFarland v. Wheeler*, 26 Wend. 467.

*Charles R. Brown & Son,* for plaintiff.

MONTGOMERY, J.   This is an action in trover for the conversion of a quantity of logs removed from the mouth of Salmon Trout river by the defendant.   The defendant was general owner of the property.   The plaintiff claimed a lien upon the logs for the work of cutting, hauling, and rafting, under a special contract.   In 1888 the parties had an agreement in writing, by the terms of which Haughton agreed to cut, haul, run, and deliver certain other logs at the mouth of Pine river, on or before September 1 following; the defendant agreeing, as fast as scaled and delivered, to pay $4.50 per 1,000.   This agreement is only important as it is claimed on both sides that some of its provisions were designated by the oral agreement as the provisions which should control the contract in question.   In the spring of 1889 the contract in question was made, which was verbal.   The plaintiff claims that the contract was to perform the work according to the same terms provided in the written agreement the previous year, except one,—that plaintiff was required to drive the logs out by September 1, if the state of the water was such as to admit of it; while the defendant claims that the terms of the contract were that they were to be driven out by September 1 in any event.   Under the agreement in question, the logs were put in, but were not run to the mouth of the stream until the spring of 1890.   The defendant also claims to have offered testimony tending to show that, even if the agreement was as plaintiff contended,—viz., that the logs should be run as soon as possible,—the agreement had not been complied

with, as the logs might have been run in October, 1889. The defendant, in the spring of 1890, without making any tender of the amount due, and against the plaintiff's protest, took the logs, and rafted them to Huron bay. There were also included in the logs, as is claimed by the plaintiff, $185 worth, which were his individual property. The case .was tried before a jury, and a verdict was awarded to plaintiff of $1,720. The defendant appeals.

It is not claimed that any steps were taken to enforce the statutory lien, either before or since the defendant took possession of the property; so that the question turns upon whether the plaintiff had, at the time the property was taken from his possession, a common-law lien upon the logs. It is contended by the defendant—

1. That there is no lien, at the common law, in favor of one who cuts, hauls, and rafts logs.

2. That if, in any case, there is such a lien, the contract in this case did not contemplate it, as it was not contemplated that possession should be retained by the plaintiff.

3. That, if any lien existed at any time in favor of the plaintiff, it could only be maintained by him upon the performance of the contract upon his part, and that, upon a substantial breach of the contract in any respect not waived by the defendant, his lien would be discharged without tender.

It was held in *Phillips v. Freyer*, 80 Mich. 256, that the statute which gives a lien to any person or persons who perform any labor or services in manufacturing lumber, etc., was intended to provide an additional remedy to one already existing, and was not intended to abrogate the common-law lien in favor of manufacturers. We are convinced that it should be held that one who, by contract, has bestowed labor upon the property of another, such as cutting, hauling, and rafting logs, and by the terms of which contract he is entitled to retain possession up to the time of payment, is entitled to a lien thereon for his

services.    The general rule is stated to be that a bailee, who, by his labor and skill, has imparted additional value to the goods, has a lien upon the goods for his reasonable charges.    This rests on principles of natural equity and commercial necessity, prevents circuity of action, and gives security and confidence to agents.    2 Kent, Comm. 634. It has been held that a raftsman of lumber is entitled to a lien on the lumber which he rafts for another.  *Farrington v. Meek,* 30 Mo. 578.    It is true, as stated in Jones, Liens, § 702, that, at the common law, laborers engaged in cutting, hauling, and driving timber had no lien thereon.    But this is upon the ground that possession is not ordinarily committed to such laborers, and it is stated in the text that—

"It is indispensable to the continuance of such a lien that it should be accompanied by possession.    \*    \*    \* A laborer cutting, hauling, and driving logs could retain possession only by placing them upon his own land, or upon the land of another under agreement that such other should hold possession for him.    Practically, the laborer cannot retain possession."

But it is said in the same section that—

"If it be agreed between the parties that the laborer or contractor shall cut timber, and deliver it upon the owner's premises, and it be further stipulated that the laborer or contractor shall have a lien upon the logs until he is paid, he may resume possession, and assert his lien."

And it is also said, in section 703:

"One who has cut and hauled to his mill a quantity of timber from the land of another, under a contract with him, has a lien at common law, for his labor, upon the lumber in his possession remaining manufactured from the timber, and also upon the logs unsawed;" citing *Palmer v. Tucker,* 45 Me. 316.

We think the circuit judge was right in holding that under the contract in question the law would raise a lien in favor of the plaintiff, upon the performance by him of

the contract. We also think, under the testimony in the case, that it was a question of fact for the jury as to whether the plaintiff had retained possession until taken from him by the defendant without his permission, and tortiously; and, if so taken from his possession, trover is an appropriate remedy. 4 Amer. & Eng. Enc. Law, 117, and cases cited.

But the circuit judge charged the jury, unqualifiedly:

"I advise you, gentlemen, as requested by plaintiff's first request, that the plaintiff was entitled to a lien upon these logs for the labor he and the persons in his employ had performed upon them under this contract, providing you shall find, under the testimony of the case, that these logs remained in the possession of the plaintiff down to the time of the taking of them away by the defendant."

This instruction is excepted to, and it is apparent from the further instructions given that it was intended that the jury should understand from the instruction quoted that the plaintiff was entitled to a lien, even though he had not substantially performed his contract; for, in another portion of the charge, it is stated:

"If the plaintiff has not substantially performed it [the contract], and the defendant has suffered damage by reason of it, you have the right to recoup or take from the claim of the plaintiff so much as you shall say, under these instructions, the party has suffered."

We think these instructions were misleading and erroneous. The remedy afforded by the common law to one who is given a lien for services performed is a harsh one, and cannot be maintained where he has failed to comply substantially with the terms of his contract. The modern doctrine, obtaining in this State,—that, even where one has failed to comply with the terms of his contract, he may recover, upon a *quantum meruit,* the value of his services, less such damages as the other party may show have been occasioned by his breach,—has never, we think,

been extended so as to entitle one to maintain a lien upon property in his possession where he is thus in default. We express no opinion as to whether one may, under a *quantum meruit*, entitle himself to a statutory lien where he has failed to perform his contract substantially. This question would depend upon the terms of the statute giving the lien. But at the common law, when the lien holder is entitled to withhold possession from the true owner, this right only exists up to the time when payment or tender of the amount due is made. If, then, one failing to perform his contract could still assert a lien on the *quantum meruit*, the right of the owner to discharge the lien by tender would be cut off. There is no method by which he can ascertain with certainty the amount necessary to tender. It is stated in Jones, Liens, § 1029:

> "One who has undertaken to perform certain labor, and has failed to fulfill his contract, and performed only a part of the service, has no lien for what he has done. The other party is entitled, if he elects, to recover damages for the non-performance of the contract; and, these damages being of uncertain amount, it is uncertain whether the person who has undertaken to perform the labor will, on final adjustment, receive anything for the labor he has done."

See, also, *Hodgdon v. Waldron*, 9 N. H. 66; *Hilger v. Edwards*, 5 Nev. 84.

The principle is that stated by this Court in *McMaster v. Merrick*, 41 Mich. 505:

> "A lien is waived by implication if privileged and unprivileged claims are commingled in the same dealings, so that the lien is not kept ascertainable without restating and charging the accounts."

There are indications in the record that the jury found that the contract had been substantially performed by the plaintiff, but we are not able to say that this so conclusively appears that we would be justified in holding that

the error in the instruction did not prejudice the defendant's rights.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.