[S. F. No. 4821.   Department Two.—December 22, 1908.]

## CHARLES QUIST, Plaintiff, Respondent; DANIEL B. MICHAEL et al., Cross-Complainants, Respondents, v. A. W. SANDMAN et al., Defendants; H. HILL and A. P. HILL, Appellants.

FORECLOSURE OF LIENS UPON TAN BARK—JUDGMENT AGAINST CONTRACTOR—APPEAL BY OWNERS OF TIMBER LAND—NOTICE—CONTRACTOR NOT AN ADVERSE PARTY.—Upon appeal by the owner of timber land from a judgment foreclosing liens upon tan bark situated thereon, in favor of plaintiff and cross-complainants for unpaid services rendered by them in peeling the same for a contractor employed by such owners to do the peeling and deliver the same at a specified landing, personal judgment against the contractor having been also taken by respondents, the contractor cannot be injuriously affected by the appeal from the judgment of foreclosure, and cannot be deemed a party aggrieved thereby, and the failure to serve him with the notice of appeal, as an adverse party, is not ground for a motion to dismiss the appeal.

ID. — ORDER DENYING NEW TRIAL — IMPROPER MOTION — ABSENCE OF ISSUE—STIPULATED FACTS—DECISION AGAINST LAW.—A new trial is the re-examination of an issue of fact, and a motion therefor is improper when there was no issue of fact, but the judgment was rendered wholly upon stipulated facts. Nor will such motion lie on the ground that the decision is against law upon the stipulated facts, that ground being only reviewable upon appeal from the judgment. When a motion for a new trial is improper, an order denying it is properly made.

ID.—APPEAL FROM ORDER—AFFIRMANCE.—An appeal from an order denying an improper motion for a new trial will not be dismissed; but the proper course is to affirm the order.

ID.—EMPLOYEES OF CONTRACTOR WITHOUT LIEN ON TAN BARK—CONDITION OF LIEN AGAINST PERSONAL PROPERTY.—The employees of the contractor have no lien upon the tan bark peeled for their services rendered in peeling the same for the contractor. Such tan bark is personal property; and no lien exists for services rendered

in relation to personal property either at common law, or under section 3052 of the Civil Code, except in favor of persons directly contracting with the owner or with one authorized to act for him as his agent, and holding possession thereof until the services rendered are paid.

ID.—EXCLUSIVE POSSESSION ESSENTIAL TO LIEN—POSSESSION INCIDENT TO EMPLOYMENT THAT OF CONTRACTOR.—Exclusive possession of personal property by those performing labor thereon is essential to a lien claimed therefor. The possession of the tan bark by the employees of the contractor as a mere incident to their employment is the possession of the contractor, and cannot constitute the exclusive possession required to sustain their claims of liens thereupon.

ID.—OWNERS OF LAND NOT INDEBTED TO CONTRACTOR'S EMPLOYEES.— The owners of the timber land upon which trees were to be peeled for tan bark by their contractor not having employed the servants of the contractor, and not having placed them in the possession of the property, are not indebted to them in any manner for their services.

ID.—LIEN OF CONTRACTOR NOT FOR BENEFIT OF EMPLOYEES—WAIVER OF LIEN BY CONTRACT.—Even if the contractor had the right to enforce a lien under his direct employment by the owners, his employees could not avail themselves of the benefit thereof. But when the contractor has expressly agreed to deliver all tan bark peeled at a designated landing, and by the terms of his contract is to be paid only upon such delivery, the contract expressly negatives any right to retain possession of any tan bark until paid, and the contractor has waived any lien thereupon.

ID.—CONTRACTOR NOT "LEGAL POSSESSOR" OF TAN BARK ON TIMBER LAND—ABANDONMENT—EMPLOYEES NOT TRANSFEREES ENTITLED TO LIEN.—The contractor employed to peel tan bark from trees on timber land of the owners, and to deliver the same elsewhere, is not "the legal possessor" of tan bark merely peeled and not removed from the land, under section 3052 of the Civil Code. He had only a qualified possession of the land for the purposes of the contract, and he could not, by abandoning the contract, and leaving tan bark merely peeled on the land, authorize his employees who assisted in peeling the same, as transferees of possession, to enforce any lien upon such tan bark against the owners of the land for unpaid services rendered to the contractor.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

McNab & Hirsch, for Appellants.

Thomas, Pemberton & Thomas, and Robert Duncan, for Plaintiff, Respondent.

Robert Duncan, for Cross-Complainants, Respondents.

LORIGAN, J.—This action was brought by plaintiff against A. W. Sandman, and the Hills, and others, to obtain a personal judgment against Sandman and to enforce a lien upon some 235 cords of tan bark, the property of the Hills. All the other defendants except Sandman and the Hills filed cross-complaints asking a personal judgment against Sandman and also asserting liens against the tan bark similar to those asserted by the plaintiff. The claims asserted by the plaintiff and cross-complainants were for labor in cutting and drawing the tan bark from the trees on the premises of the Hills, under their employment for that purpose by Sandman, who had entered into a contract with the Hills to do the peeling and delivery of the bark. Sandman made default. The Hills appeared and resisted the assertion of a lien on their property. The cause was submitted on an agreed statement of facts, and the court gave the plaintiff and the cross-complainants personal judgment against the defendant Sandman, and a further judgment establishing their asserted liens against the bark, and directing its sale by the sheriff to satisfy their lien claims.

The defendants Hill appeal from the judgment and from an order denying their motion for a new trial. Sandman was not served with notice of this appeal.

It is insisted by the respondents that both these appeals should be dismissed, and they have moved to that effect.

They insist that the appeal from the judgment should be dismissed because the defendant Sandman, who had the contract with the Hills to cut and deliver the bark and who employed the respondents to do the work thereof, and against whom they obtained a personal judgment, should have been served with the notice of appeal from the judgment.

Their claim is that he was an adverse party whose interest would be injuriously affected by a reversal of the judgment establishing and enforcing the lien, and, hence, under section 940 of the Code of Civil Procedure, should have been served with the notice of appeal.

We do not think this point has any force. Though the judgment against Sandman was a personal judgment for the full amount of the several claims of respondents, he has not appealed from it. That judgment fixed a primary liability on his part to respondents. It is true, that by another part of the judgment liens are established against the property of the appellants Hill in favor of respondents, but the judgment establishing them is separate and distinct from the personal judgment against Sandman, and a matter in which the latter has no interest and which does not affect him, unless it can be said that that portion of the judgment providing that the proceeds of the sale of appellants' property, on which the lien is fixed, shall be paid on the personal judgment obtained against him, is a legal advantage of which he will be deprived if the judgment establishing the lien is reversed. It is the claim of respondent that Sandman has this legal advantage and benefit. It is insisted by them that as Sandman is interested in having the judgment sustained, so as to have the proceeds of the sale of the property of the appellants Hill, upon which the lien of respondents was fixed, applied towards the satisfaction of the personal judgment against himself, he is therefore a party who would be injured by a reversal of the judgment, and, hence, should have been served with notice of appeal.

We do not, however, think that Sandman comes within the class of aggrieved parties upon whom it is necessary to serve such notice. While it would appear on the face of the judgment, superficially considered, that he would be injuriously affected by a reversal of it, yet when his legal rights under the judgment as an entirety are considered, it is obvious that it can have no such effect.

As we have seen, Sandman was personally responsible to the respondents for whatever claims they had for their services in cutting the bark. Any right which they could assert against the property of the appellants Hill, if such right existed at all, was conferred by law and consisted of a right to subject the property of the Hills to a lien for their services. The primary obligation to respondents, however, was upon Sandman, and respondents obtained a personal judgment against him for the full amount of their claim. Any lien which the law gave to respondents upon the property of appel-

lants Hill was for the benefit of respondents and not for the advantage of Sandman. In legal effect this judgment, in as far as it enforced the lien against the property of the Hills and directed a sale and the application of the proceeds toward the satisfaction of the judgment obtained against Sandman was of no benefit to the latter so as to make the reversal of the judgment injurious to him. Sandman had no legal right to have the property of the appellants Hill subjected to the payment of his indebtedness to the respondents. The primary personal obligation was on him to pay the respondents for their labor. The law, if it gave them a lien at all, created it for the benefit of the respondents because he had failed to perform his obligation to them. If the judgment here involved were reversed, it could only be reversed so far as it established a lien on the property of the appellants. The personal judgment against Sandman not being appealed from would remain after reversal as it had stood before, subject to enforcement at any time on execution at the instance of respondents. Reversing that judgment in so far as it established a lien, which is the only question involved on this appeal, could not affect the personal judgment against Sandman. Nor could such reversal injuriously affect Sandman because thereby Sandman would be deprived of a lien against appellants' property. It would in law be no injury to him, because, had the judgment as far as it established the lien been affirmed, and the property to which the lien attached been sold under the judgment, the Hills would have their action over against Sandman to recover from him the amount which their property had had to contribute to the payment of his personal judgment and primary liability to the respondents. All that the reversal would amount to as far as Sandman is concerned would be that the Hills, as against him, would not be forced to take such action, nor Sandman be subjected to it. Under such circumstances, and where it is apparent that no legal benefit could accrue to Sandman under the judgment establishing the lien, it cannot be said that the reversal of the judgment as a lien would injuriously affect him, and, hence, he was not a party upon whom notice of appeal should be served. (See on this proposition generally *Mannix* v. *Tryon,* 152 Cal. 38, [91 Pac. 983].)

The notice to dismiss the appeal from the judgment is denied.

Respondents likewise move to dismiss the appeal from the order denying the motion of appellants for a new trial. Their point is that as the case was submitted to the trial court for disposition on an agreed statement of facts, which facts it was also stipulated by the parties were to be considered as the findings of the court in the case, a motion for a new trial would not lie.

We are satisfied that the point that under such circumstances a party cannot demand a new trial is correct.

The statement of facts in the case at bar constituted by stipulation the findings of the court. It is not, and under the stipulation as to facts, could not be claimed that the findings are not sustained by the evidence, because the findings consist of the agreed facts themselves.

"A new trial is a re-examination of an issue of fact in the same court after trial and decision. . . ." (Code Civ. Proc., sec. 656.)

It is quite obvious that where it is stipulated between parties as to what the facts in the controversy are, and that those facts shall constitute the findings, there is no room for demanding a new trial. It would be idle to grant a new trial and re-examine a question of fact when there has not only been no controversy over any issue of fact, but where the facts are expressly agreed upon.

Neither under the circumstances could the appellants be heard to demand a new trial, as they did, on the ground that the decision of the court was against law. That point could only be availed of on appeal. (*In re Doyle,* 73 Cal. 565, 570, [15 Pac. 125]; *Swift* v. *Occidental Mining Co.,* 141 Cal. 161, [74 Pac. 700].)

The trial court correctly denied the motion for a new trial, but the proper course here is not to dismiss the appeal therefrom, but to affirm the order of the lower court denying the motion for a new trial, which we do. (*Quist* v. *Michael,* 153 Cal. 365, [95 Pac. 658].)

Having disposed of these preliminary motions, we now proceed to a consideration of the appeal on its merits.

From the facts as they were stipulated upon the trial and which constitute the findings of the court, it appears that the defendants Hill, as owners of a tract of timber land in Mendocino County, entered into a written agreement with the

defendant A. W. Sandman by which the latter was to peel, from the trees on said land, all the tan bark which would go to a certain measurement, and deliver it at a landing known as Munroe Landing, in said county. The Hills agreed to pay Sandman $9.50 per cord for peeling and delivering said bark at the landing, settlement to be made when each fifty cords thereof were delivered and accepted by the Munroe Lumber Company. Sandman entered upon the performance of his contract and employed the plaintiff and the cross-complainants as laborers to peel the bark for him. He delivered 119⅕ cords at the landing, for which he was fully paid by the Hills, and then abandoned his contract. At the time Sandman abandoned the contract he left on the premises of the Hills where the peeling was being done the quantity of tan bark which plaintiff and the cross-complainants as employees of Sandman had peeled and for which he had not paid them, and of which since it has been peeled they had been in possession on the land of the Hills. The Hills had not employed the plaintiff or cross-complainants and had no notice of any claim of lien by them until this action to foreclose them was brought, although they knew, in a general way, that plaintiff and cross-complainants were peeling said bark for Sandman.

Upon these facts agreed to as findings, and upon additional admissions by the parties as to the amounts due from Sandman to plaintiff and the cross-complainants for their labor in peeling the bark, the court awarded a personal judgment in their favor against Sandman, and also decreed a lien in their favor upon the bark remaining in their possession, and directed its enforcement by sale.

The only point on this appeal on the merits is, as to whether the respondents were entitled to any lien against the tan bark in question and which it is conceded was the property of the appellants Hill.

Respondents base their claim to a lien upon section 3052 of the Civil Code which provides that a person "who makes, alters, or repairs any article of personal property, at the request of the owner, or legal possessor of the property, has a lien on the same for his reasonable charges for work done and materials furnished, and may retain possession of the same until the charges are paid. If not paid within two months after the work is done the person may proceed

to sell the property at public auction, giving ten days' public notice of the sale," etc.

As far as the first part of the section which we have quoted is concerned, it simply declares the common-law rule as to the right of a mechanic or artisan performing labor on an article of personal property to a lien thereon dependent on possession for payment for his service. While at common law the right to a lien extended to a large class of persons, it was the intention of the legislature by the code provision to extend its application so that any person who had altered or repaired any article of personal property at the request of the owner or legal possessor thereof should have the benefit of a lien. It was intended also by the code provision to provide for a method of enforcing the lien which did not exist at common law because at common law no lien on a chattel for work done or materials furnished gave a right to a sale of the chattel for the enforcement of the lien. (Boisot on Mechanics' Liens, sec. 784.)

But while the code has extended the right to a lien in general to all persons performing the prescribed labor concerning an article of personal property at the request of the owner or legal possessor thereof, it is in other respects but declaratory of the common-law rule and the right to a lien must be governed by the same rules which prevailed at common law. It can only be asserted under the same circumstances and conditions as it could be asserted at common law and the right to do so must be interpreted in accordance with common-law principles.

Now as to the common-law rule.

It will be observed that there was no contract between the Hills and the respondents for the peeling of the bark against which the latter assert their lien. They were not the employees of the Hills. The Hills had made their contract directly with Sandman for the work and Sandman had employed the respondents to do the labor for him; they were the employees of Sandman and could only look to him for payment of their wages upon his personal contract therefor.

Under these circumstances the respondents would have no lien upon the property of the Hills at common law, and as the code section is but declaratory of that law, could have no lien under it. At common law the right to a lien existed only in

favor of the person who had done the work directly under a contract with the owner of the article of personal property upon which it had been expended, or where it had been done by agreement with some one authorized by the owner to contract with the person to do the work. Privity of contract between the owner of the chattel and the mechanic was an essential prerequisite to support the claim of lien. It did not lie in favor of an employee or servant of the person who had contracted with the owner to do it. The only security which the employee performing service on a chattel had was the personal responsibility of his employer on the contract of hiring.

In speaking of the right to such a lien at common law, it is tersely said in Jones on Liens (because the principle is not open to question) that "the lien belongs strictly to the person who has contracted with the owner to do the work. A servant or journeyman or subcontractor of such person has no lien." (Jones on Liens, p. 737.)

The rule is stated to the same effect in Boisot on Mechanics' Liens, secs. 768 and 772, and in Story on Bailments, sec. 440. It is also declared to be the rule at common law by the decisions. (*Hollingsworth* v. *Dow,* 19 Pick. (Mass.) 228; *Quillian* v. *Central R. R. etc. Co.,* 52 Ga. 374; *Jacobs* v. *Knapp,* 50 N. H. 71; *Globe Works* v. *Wright,* 106 Mass. 207; *Wright* v. *Terry,* 23 Fla. 160, [2 South. 6]; *Landry* v. *Blanchard,* 16 La. Ann. 173.)

A right to a lien could only be asserted at common law where the mechanic or artisan had the exclusive possession of the thing with reference to which he had performed labor and against which he asserted his lien. It cannot be said that an employee ever has that possession. It can only be in the person with whom the owner directly contracts. Whatever possession an employee of such contractor may have is but the possession of his employer. While it is true that in the instant case the respondents as bark peelers under their employment by Sandman had some possession of the bark, it was simply such a possession as any employee would have of the property with respect to which his employer had agreed to perform services. It was no different than the possession which the employees of a machinist would have of a machine which their employer had agreed to construct or repair, or which

any other employees working for their employer would have of the property concerning which the employer had contracted with the owner to do work. It would be simply a possession incident to the performance of their duties upon the thing under the direction of their employer and for him, and their possession would be but the possession of their employer.

The Hills were not indebted to the respondents in any way, nor had they even placed them in possession of their property.

As to the respondents their contract was with Sandman and he was responsible to them for the payment of their wages. He alone was given possession by the Hills of the property upon which the bark was peeled and upon which respondents assert a lien, but whatever sort of possession the respondents had or obtained of the peeled bark it was at all times subordinate to that of Sandman. Their possession of it was simply that of employees and was not that exclusive and unconditional possession which is necessary in order to constitute the basis of a lien.

Of course, the respondents are not asserting a right to hold the tan bark for the benefit of any lien which Sandman might have upon it because the latter under his contract could have no lien. He had waived it under his agreement which provided that he was only to be paid for the bark after it was delivered and accepted by the Munroe Lumber Company. His agreement to deliver the bark before payment conclusively negatives any right in him to retain possession of it until payment. The respondents assert an independent right in themselves as against the Hills to a lien upon the property of the latter with whom they never had any contract and possession of whose property was never in them, but in Sandman. This it is clear under the authorities they are not entitled to do. At common law they could assert no lien and no greater right is given them under the code provision in that respect than they could have asserted at common law.

We are cited by respondents to no authority which sanctions the right of an employee at common law to assert a lien against the property of one who has contracted with his employer to perform work or furnish materials in the making or repairing of a chattel.

They rely here in support of such asserted right upon the case of *Douglass* v. *McFarland*, decided by this court, in 92 Cal.

656, [28 Pac. 687]; and on *Holderman* v. *Manier,* 104 Ind.
118, [3 N. E. 811]; *Haughton* v. *Bush,* 101 Mich. 267, [59
N. W. 621]; *Palmer* v. *Tucker,* 45 Me. 316; *Phillips* v. *Fryor,*
80 Mich. 254, [45 N. W. 81]. But none of these cases sup-
port the right of an employee of a contractor to a lien against
the property of the owner. The case of *Douglass* v. *McFar-
land,* the only one we need particularly refer to, involved the
right of the plaintiff there to retain the possession of certain
redwood railroad ties and shakes which he had manufactured
on the land of one Harney under a contract with the latter
to do so. He asserted a lien upon the property and sought
to retain possession until the amount due him for manufac-
turing the ties and shakes should be paid. It was held under
the same section upon which respondent relies (Civ. Code, sec.
3052) that plaintiff had a lien on the property and a right
to retain the possession of it until his lien was discharged.
But it will be observed that the assertion of the lien in the
case cited was by the contractor himself and not by an em-
ploy  e. There is nothing in the case militating against the
general rule that an employee of a contractor has no lien. It
is simply in harmony with the rule that the contractor alone
has the lien. The cases cited by respondent from other juris-
dictions were also cases where the lien was sustained but on
behalf of the parties directly contracting with the owner for
the labor upon the article made or repaired. None of them
were actions brought by an employee of the contractor against
the owner.

Respondents insist, however, that under the terms of the
section their employment by Sandman was sufficient to give
them a lien on the property of the Hills because Sandman was
the "legal possessor of the property" and in possession of the
tan bark when the services upon it were performed.

But Sandman's possession of the land under the contract
with the Hills to peel the tan bark from the trees thereon did
not constitute him a "legal possessor of the property" so as
to bind the property of the Hills. What is meant by the term
"legal possessor of the property" in the section is one who
has the right by virtue of his possession to originally contract
with reference to the manufacture, alteration, or repair
thereof, such as, for example, a lessee or pledgee of the prop-
erty; some one having a possession coupled with a right of

property so that he can contract with reference to it respecting any of the matters enumerated in the section. Sandman was not such a legal possessor. His possession was only a qualified one, simply for the purpose of peeling and delivering the bark. He was not a "legal possessor of the property" in any sense under the code section so as to confer upon respondents under their employment by him the right to assert a lien against it.

The judgment is reversed and the cause remanded.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.