## COLONIAL SUPPLY CO. v. SMITH et al.

No. 17179. Opinion Filed Feb. 28, 1928.

Rehearing Denied Dec. 24, 1928.

Hummer & Foster, for plaintiff in error.

Andrews & Aston, for defendants in error.

FOSTER, C. This is an action in replevin brought by the plaintiff in order that it might foreclose a mortgage given by R. C.

Morrison on the 13th day of July, 1922, on a string of oil well drilling tools.

The petition alleges, and it is admitted, that the tools were, at the time of the commencement of this action, in the possession of Leslie Smith, defendant, a resident of Pittsburg county. The action was begun in January, 1924. At the time the mortgage was given, the tools were located on a lease in Coal county, and were lying idle. Nolen Willis had been employed by R. C. Morrison, owner of said tools, to guard the same in order that they might not be stolen or taken away.

Lath Shores, for defendant, testified in substance: That he was employed by R. C. Morrison as a driller and tool pusher, and at the request of Morrison, owner of said tools, accompanied him to the Henryetta State Bank, where, on the 13th day of July, 1922, the mortgage and notes were executed by Morrison to the Colonial Supply Company; that at the time, and prior to the execution of the mortgage, in a conversation between Mr. Wilson, cashier of the bank, and also a director in the plaintiff company, Mr. Fisher, president of the plaintiff company, R. C. Morrison, and himself, he was authorized by Wilson and Fisher to employ a man to guard the tools that were then lying idle on the lease in Coal county; that pursuant to his authority given him by Fisher and Wilson in the conversation above referred to, he employed the defendant Leslie Smith at the sum of $5 a day to guard and watch the tools, and that Leslie Smith began his duties about July 25, 1922, and continued until about August 2, 1922, at which time he had not been paid anything for his services, and at the request and suggestion of Shores he removed the tools to his own home, which was about three miles distant and across the county line into Pittsburg county.

Leslie Smith testified to practically the same facts, and in addition thereto stated that about a month after he had removed the tools to his own home, Mr. Fisher came to his house, and in a conversation with the father of the defendant, Leslie Smith, Fisher at first criticized the defendant for removing the tools, saying he had no authority to do so. But after the suggestion was made that the defendant would return the tools to their original location, he stated that Leslie Smith had better keep the tools where they were and take care of them.

In August, 1923, the defendant had a conversation with a Mr. Duvalle, who had been manager of the plaintiff company until May, 1923, at which time the plaintiff company went into the hands of a receiver. In this conversation the defendant testifies that Duvalle told him that, although he had taken the tools without authority, he had better keep them and take care of them; that later, when the tools were demanded—which was sometime the latter part of August, 1923— he refused to deliver them until he was paid for his services $5 a day from July 25, 1922, to October 2, 1922, making a total sum of $355, and in addition thereto, storage for the tools at his home from October 2, 1922, until January, 1924, at which time this suit was commenced, said storage services being reasonably worth—as shown by the evidence of the defendant—the sum of $20 per month.

The testimony of Shores that he was originally authorized to employ a man to guard the tools on the lease for and on behalf of the plaintiff company, was specifically denied by Duvalle and Wilson and the other officers of the company, and the testimony further shows that Mr. Fisher was not even in the state of Oklahoma on the 13th day of July, but had gone to some eastern state on business and a pleasure trip. The plaintiff further denies that it had any conversation with Leslie Smith in August, 1923, other than to demand possession of its property and to refuse payment of a claim, which Smith contended it should pay.

The case was tried before a jury, and a judgment was granted in favor of the defendant Leslie Smith for the possession of the property until the sum of $401, which the jury found was due from plaintiff to defendant, was paid, and upon said verdict of the jury the court entered judgment accordingly.

After a motion for a new trial was filed and overruled, the case was brought here for review, and the plaintiff sets up in his petition for error 23 assignments, but presents all of them under the following headings:

(1) That the defendant Smith does not have a lien for his services as nightwatchman from July 25th to October 4, 1922.

(2) That if the defendant has a lien for his services rendered between July 1st and October 4, 1922, the same is inferior to the plaintiff's mortgage.

(3) The defendant Smith does not have a lien for storing the property at his residence after October 4, 1922.

(4) If the defendant does have a lien for storing the property at his residence, it is inferior to the plaintiff's mortgage.

42

(5) That the court admitted incompetent and irrelevant testimony.

(6) That the court erred in refusing to give the jury instruction No. 6, requested by the plaintiff.

(7) That the court erred in allowing the defendant an attorney's fee.

In considering these propositions, the first question that naturally presents itself is whether or not Shores was authorized by Wilson or Fisher, or any one else duly empowered by the plaintiff company, to employ the defendant Smith as a nightwatchman from July 25th to October 4, 1922. On this point the testimony is very conflicting. Shores testifies that both Wilson and Fisher, by their conversation, authorized him to employ Smith on behalf of the company. There is some dispute as to whether Wilson had authority, as he was only an inactive vice president of the plaintiff company. There is also testimony to show that Fisher was not even present at the time this conversation took place.

However, after a careful examination of all the testimony on this particular point, we believe there is sufficient testimony in the record to justify the court in allowing this disputed question of fact to be presented to the jury, and that there is evidence reasonably tending to support the verdict of the jury, and under the well-established rule in this state, such finding will not be disputed in this court.

The next proposition is whether or not Smith had a lien on the property superior to the lien of the mortgage for his work, although authorized, beginning on July 25th to October 4th. The plaintiff in error contends that the defendant must bring himself within section 7432, C. O. S. 1921, which reads as follows:

"Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof by labor or skill employed for the protection, improvement, safe-keeping or carriage thereof, has a special lien thereon, dependent on possession * * * for such service."

That since the defendant Leslie Smith did not file any lien as provided by the statute, for a person who furnishes labor and material in digging, drilling, torpedoing, completing, operating or repairing of an oil and gas well, which is provided for in section 7464, C. O. S. 1921, the only other provision is section 7432, above quoted.

Numerous authorities are cited by both plaintiff and defendant upon this proposition.

However, after an examination of the authorities, we believe that the question of whether or not he had a lien depends upon whether or not, under the facts and circumstances in this case, he had possession of the tools during the period from July 25th to October 4, 1922.

From an examination of the record we believe that Leslie Smith had possession of the tools during that period, with the consent of plaintiff company, and has a lien, dependent on possession for his services performed.

We next come to the question of whether or not Smith had a lien for storage at his residence. It seems to be undisputed at the time he removed the property from his lease to his residence, that he had no authority from the company to do so other than that given him by Shores. It is true that Shores had authority to originally employ him as nightwatchman to guard the property, but we doubt whether this gave him authority (since it was only a specific authority given to Shores and not a general agency), to authorize Smith to remove the property from the lease. However, it appears that within 20 days after it was removed, Fisher, president of the company, in a conversation with the father of the defendant Leslie Smith, told him that since it had been removed they had better keep it and take care of it.

Under these facts and circumstances, we believe that the possession of the defendant Leslie Smith was authorized. At least, there is sufficient testimony in the record to justify the finding of a jury that the possession of Smith, for the purpose of taking care of the tools, was agreed to by the plaintiff, and he would be entitled to a reasonable compensation for his services.

As to the next assignment of error, that the court admitted incompetent and irrelevant testimony as to the amount of storage, we do not believe this comes under the rule as cited by attorneys for plaintiff. It is true that testimony of this character must be as to facts and not as to conclusions. But it has been held by numerous cases in this court that the opinion of any competent person as to the reasonable value for storage or rent, is competent to go to the jury for what it is worth, although such person may not be an expert on the question.

The next question is whether or not the court erred in allowing the defendant an attorney's fee, and it is contended there is no testimony to support such a finding. It is true that the testimony of Mr. Andrews is

short, but he states that he is an attorney in this case, and has practiced law for 25 years and knows the amount of work done in this particular case, and that a reasonable attorney's fee would be $100. We believe this was sufficient. The defendant had a right to introduce other testimony to contradict the statement, which he did not choose to do, and did not even cross-examine the attorney upon his statement of the value of the attorney's fee, which the record shows he is entirely familiar with. Under this condition of the record, we believe the testimony is sufficient to justify the court in awarding the attorney's fee.

From an examination of the entire record, we believe that the instructions of the court fairly and impartially state the law governing this case, and the verdict of the jury is supported by the evidence, and that the cause should be and is hereby affirmed.

BENNETT, TEEHEE, LEACH, and REID, Commissioners, concur.

By the Court: It is so ordered.