Norton Stanard and Stanard & Carey, for plaintiffs in error.

Waldrep, Akin & High, for defendant in error.

PER CURIAM. This action was instituted in the superior court of Pottawatomie county by John Bodkin, plaintiff, against Clarence W. Jones, defendant, for the recovery of a money judgment in the sum of $988.92, for work and labor performed, and material and supplies furnished, and to establish and foreclose a lien upon and against a certain airplane, the property of the defendant, and to have the same sold to satisfy said judgment. The lien sought to be established and foreclosed is specified by the plaintiff as having been created by section 7432, C. O. S. 1921 (section 10985, Okla. Stat. 1931). After the filing of this action, one Chester A. Churchill, upon leave of court, filed his petition of intervention

## JONES et al. v. BODKIN.

No. 24063.  April 23, 1935.

therein, claiming a first and prior lien upon said airplane by reason of a certain chattel mortgage therein alleged.

The evidence disclosed that on the 28th day of May, 1931, Clarence W. Jones employed John Bodkin, at Shawnee, Okla., to work for him. Bodkin was an air pilot and mechanic, and it was agreed between the two that Bodkin was to be paid for his services at the rate of $5 per hour, actual flying time, and for services of a mechanical nature while in the employ of Jones, Bodkin was to receive a reasonable or nominal sum of money. This agreement continued until the latter part of August, 1931 (except for the interruption of about one day). During all of the time after May 28, 1931, until the latter part of August, Bodkin piloted the plane for Jones to various places in the United States, and did, and caused to be done by other mechanics, with the knowledge of Jones, work and labor on and about said plane to the extent of several hundred dollars. That the labor done by other mechanics was charged to Bodkin. In the latter part of August, 1931, Jones ordered Bodkin to take the plane to Shawnee, where it was to be kept to await the further direction of its use by Jones. And, in the meantime, during the waiting period at Shawnee, Jones was to pay, and Bodkin was to receive, the sum of $25 per month to defray the expense of keeping the plane and keeping it in shape to be used at any time. It appears also that over the entire period of time from May 28, 1931, Bodkin expended very substantial sums of money for gasoline and motor oil, used in operating the plane while in the employ of Jones, and that he has never been reimbursed for such expenditures, nor has he been paid any part of the agreed wages, or for any expense incurred by him to the date of the institution of this action. There was no evidence as to the employment of Bodkin by Jones, except the testimony of Bodkin himself. And his testimony shows substantially the above facts, and, in addition thereto, that he was at all times subject to the command and direction of Jones; that the plane was operated for Jones, and for him alone, and at any time, in any. manner, and to any place ordered, and that this relationship continued up to the institution of this action.

It is stipulated by the parties that on the 24th day of July, 1931, Clarence W. Jones, owner of the plane in question, was a resident of Allan county, Ohio; that on said date he made, executed, and delivered a good and valid chattel mortgage upon said plane to one Chester A. Churchill for the principal sum of $1,500; that said chattel mortgage was duly recorded as required by law in Allan county, Okla., and that thereafter, upon removal of said plane to Shawnee, a certified copy of said chattel mortgage was duly filed in the office of the county clerk of Pottawatomie county, Okla., within the time allowed by law, and that said chattel mortgage has not been paid.

A jury being waived, trial was had to the court on the 15th day of January, 1932, resulting in a judgment in favor of John Bodkin, defendant in error, against Clarence W. Jones, plaintiff in error, for the sum of $985.92, imposing and declaring a first and prior lien on said plane in favor of Bodkin, and denying the mortgage lien of Churchill as a first and prior lien thereon. From this judgment of the court, both plaintiffs in error prosecute this appeal.

Numerous assignments of error are incorporated in the petition in error, but they are consolidated and presented in the briefs under three propositions, the first two of which are as follows:

(1) "That under section 7432, C. O. S. 1921, Okla. Stat. 1931, sec. 10985, one employed as a pilot of an airplane to pilot the owner from place to place, at owner's command and direction, has no lien upon the property of the master as security for wages."

(2) "The lien provided in section 7432, C. O. S. 1921, is limited to lien for labor and skill."

1, 2. We shall consider these propositions in the order named. Section 7432, C. O. S. 1921 (sec. 10985, Okla. Stat. 1931), reads as follows:

"Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof by labor or skill employed for the protection, improvement, safekeeping or carriage thereof, has a special lien thereon, dependent upon possession, for the compensation, if any, which is due to him from the owner for such service."

Two things, therefore, appear to be imperative as a basis for the assertion of a lien under this statute, namely, lawful possession of the chattel by the workmen at the time such labor and skill is done and employed, and a continuation of such lawful possession until such lien is asserted. This makes it necessary to inquire what constitutes "lawful possession." And, in this connection, 50 Corpus Juris, 781, under the general subject of property, defines "possession" as follows:

"The term 'possession' has been variously defined to indicate the holding or retaining of property in one's power or control; and generally one has the possession of personal property when it is under his dominion and subject to his control. Physical occupancy and legal possession of property are not necessarily identical."

That one may have the lawful possession of a chattel and yet not retain physical contact with it is too well settled by the principle of constructive possession to require extended comment. Such a condition obtains in the case of a servant who, in the performance of his duties, works with the chattels of his master. The relative positions of a master and his servant in regard to the chattels of the master with which the servant works in the course of his employment has been many times declared by various courts of last resort. A very clear and satisfactory declaration of their respective relationships is contained in the case of Shipp v. Patton, 123 Ky. 65, 93 S. W. 1033, wherein the court said:

"Possession is the right and power to control a thing. A person has the custody of property, as distinguished from the possession, where he merely has the care and charge of it for one who retains the right to control it, and who therefore retains constructive possession. A servant, therefore, or other agent, who merely has the care and custody of his master's goods, is guilty of larceny if he converts them to his own use without his master's consent."

The statute involved in this action is substantially a re-enactment of the common-law right to a lien depending upon possession. 17 Ruling Case Law, 602, sec. 10, states the common-law rule to be:

"The common-law lien to which personal property is subjected in favor of an artisan or tradesman who has expended work upon it is not available to an ordinary servant in respect to his master's property, as a means of securing the payment of his wages, since the servant's possession of his master's property is deemed that of the master."

This court has heretofore passed upon the question in controversy here. In the case of Boston & K. C. Cattle Loan Co. v. Dickson, reported in 11 Okla. 680, 69 P. 889, in which a servant claimed a lien upon certain cattle for feeding and herding them, this court, in referring to the identical section of our statute claimed under in this case, said:

"But the defendant also cites section 31, c. 48, of the Statutes of 1893 as giving him a lien. This section, like the other one relied upon by the defendant in error, has no application to a case like the one at bar. If Dickson had taken possession of the cattle, and cared for them and fed them for plaintiff under a contract so to do, then there might be some reason in the contention; but, if Dickson has a lien on the cattle which he was herding, then under the same reasoning every farm hand has a lien on the corn which he husks, on the wheat which he cuts, on the horses which he feeds and cares for, and so on. That was not the intention of the Legislature. Dickson's possession of the cattle was the possession of his employer."

This court again, in the case of Hunt v. Stribling, reported in 57 Okla. 507, 157 P. 741, referred to the statute here under consideration, and quoted with approval its former holding in the Boston & K. C. Loan Co. v. Dickson Case, supra.

The state of California, under a similar statute, has established the same rule as above announced. In the case of Quist v. Sandman, 99 P. 204, the Supreme Court of that state said:

"A right to a lien could only be asserted at common law where the mechanics had the exclusive possession of the thing with reference to which he had performed labor and against which he asserted his lien. It cannot be said that an employee ever has that possession."

Likewise, in the case of Mendilie v. Snell et al., 127 P. 550, the Supreme Court of Idaho had this to say:

"Oklahoma has a statute (sec. 31, c. 48, Statutes 1893) in the identical language of the first sentence of our statute, section 3446, supra, and the Supreme Court of that state, in Boston & K. C. Cattle Loan Co. v. Dickson, 11 Okla. 680, 69 P. 889, had occasion to consider and construe it, and held that a herder of cattle employed by the month and working under direction and control of the owner cannot acquire a lien under this statute."

The defendant in error has cited only one case in his brief bearing upon the subject in question, that being the case of Colonial Supply Co. v. Smith, decided by this court February 28, 1928, and reported in 134 Okla. 40, 272 P. 879. In that case, however, the object of the employment, as well as possession of the chattels, was materially different from the case at bar. In stating the facts in that case, this court said:

"The petition alleges, and it is admitted, that the tools were, at the time of the commencement of this action, in the possession of Leslie Smith, defendant, a resident of Pittsburg county. * * * Nolan Willis had been employed by R. C. Morrison, owner of said tools, to guard the same, in order

that they might not be stolen or taken away."

It will be readily seen, therefore, that the very nature of his employment was for the preservation and safekeeping of the property. And, further, his employment being for that purpose, and that purpose alone, at a time when the tools were in Pittsburg county, far removed from the owner's place of business in Okmulgee county, it is fully apparent that Willis had such possession, in view of the object of his employment, of such chattels as to entitle him to claim a lien under our statute depending upon possession.

A servant who is employed at a stipulated salary per month or other agreed period of time, and who, in the course of his employment, works with certain chattels of his master, does not thereby acquire such independent possession of such chattels as to entitle him to claim and foreclose a lien thereon as provided by section 10985, Okla. Stat. 1931 (sec. 7432, C. O. S. 1921), notwithstanding such services involve special knowledge and skill.

3. The second proposition presented, to wit:

"The lien provided in section 7432, C. O. S. 1921 (sec. 10985, O. S. 1931), is limited to services by the application of skill and labor,"

—we believe to be clearly settled by the statute itself.

And unless motor oil, gasoline and repairs can be said to be, under the circumstances, either labor or skill, and supplied for the protection, improvement, safekeeping, or carriage thereof, such commodities would very clearly be excluded. We are familiar with established principles wherein both gasoline and motor oil have been held to be in the nature of labor. However, those cases involve facts so widely different from the facts of this case that the questions are not similar in any respect.

Our attention is directed by plaintiff in error to the case of Nelson v. Yonge et al., decided by the District Court of Appeal of California, and reported in 239 P. 67, wherein was held:

"Party advancing money for freight charges and purchasing tires to be placed upon automobile does not have a lien thereon under Civ. Code, sec. 3051."

The first half of the section referred to is identical with the section of our statute under which defendant in error claims in this case. And the court held that no lien would be created thereunder.

In a case involving the principle we now consider, the Supreme Court of Maryland, in the case of Evans Marble Co. v. International Trust Co., 101 Md. 210, 109 Am. St. Rep. 568, held the law to be:

"Under a statute allowing a mechanic's lien for work done upon a building, but not for materials furnished, a person who does work on a building and also furnishes materials under an entire contract, the consideration being a lump sum for both, is not entitled to a lien."

But, outside of these considerations, our statute is so clear in its meaning that we are forced to conclude, under the facts proven, that motor oil and gasoline bought and paid for by a servant for the ordinary operation of his master's airplane is neither labor nor skill, and contributes nothing to the protection, improvement, safekeeping, or carriage thereof, and such expenditures are therefore not within the terms of the statute claimed under.

For the reasons herein stated, the judgment of the trial court as to the money judgment in favor of defendant in error is hereby affirmed, and that part of said judgment wherein a first and prior lien was adjudged upon and against the airplane in question, in favor of defendant in error, and denying the mortgage lien claimed by plaintiff in error Chester A. Churchill, intervener below, is reversed.

Said cause is therefore remanded with the modifications herein set forth.

The Supreme Court acknowledges the aid of Attorneys C. J. Pinkston, Wellington L. Merwine, and Thomas H. Wren in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pinkston, and approved by Mr. Merwine and Mr. Wren, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur.