## HUNT v. STRIBLING.

No. 6671.   Opinion Filed May 2, 1916.

(157 Pac. 741.)

**MASTER AND SERVANT—Mines and Minerals—Mining Liens—Statu-
tory Provision.**   One employed by a mining company as a watch-
man and to collect accounts due the company is not entitled to a
lien on the property of the company to secure the payment for
his services under section 3852 or section 4007 of the Revised
Laws of 1910.

(Syllabus by Hooker, C.)

*Error from District Court, Ottawa County;
Preston S. Davis, Judge.*

Action by F. C. Hunt against Mrs. William B. Strib-
ling.   Judgment for defendant, and plaintiff brings error.
Affirmed.   ·

*A. Scott Thompson,* for plaintiff in error.

*A. C. Towne,* for defendant in error.

Opinion by HOOKER, C.   The main question involved
in this appeal is whether the plaintiff in error is entitled
to a lien on the property of the Virginia Zinc Company
and others for services rendered by him in the capacity of
watchman, caretaker, and for collecting outstanding ac-
counts.   It is contended by the plaintiff in error that he
is entitled to a lien on said property by virtue of two pro-
visions of the Revised Laws of 1910, to wit, section 3852
and section 4007, which sections are as follows:   ·

"3852.   Every person who, while lawfully in posses-
sion of any articles of personal property, renders any serv-
ice to the owner thereof by labor or skill employed for
the protection, improvement, safekeeping or carriage there-
of, has a special lien thereon, dependent on possession,

for the compensation, if any, which is due to him from the owner for such service."

"4007. All miners and other employees engaged in the work of developing and opening up coal and other mines, sinking shafts, the construction of slopes or drifts, the driving of entries, mining in coal and other mines, and for all labor performed in and about such mines, shall have, as security for such work performed, a lien upon all property of the person, owner, agent, firm or corporation owning, constructing or operating such mine or mines, used in the construction or operation thereof, to satisfy in full the amount due for such labor performed; the same to be enforced and secured upon the same general terms and after the manner of procedure in granting mechanics' liens."

By reference to the petition of the interpleader in this case it appears that the services rendered by him were in the capacity of night watchman and in the collection of accounts. We cannot say from the allegations of the pleading itself that the property which he was watching was personal property, but on the contrary it appears to have been a building and machinery therein located. This court, in the case of *Boston & K. C. C. Loan Co. v. Dickson,* 11 Okla. 680, 683, 69 Pac. 889, held that the possession of one employed as Hunt alleged he was employed was the possession of the employer and the aforesaid section of the statute did not apply in a case similar to the instant case. We do not think that the services performed or claimed to have been performed by Hunt in his petition were sufficient to entitle him to a lien on this property under the provisions of the statute above quoted.

Section 4007, *supra,* gives to "all miners and other employees engaged in the work of developing and opening up mines * * * and for all labor performed in and about

such mines shall have * * * a lien." This lien is purely statutory, and one claiming a right to it must bring himself within the provisions of the statute.

The purpose of the act was to give to those who are engaged in the development and opening up of a mine a lien upon the property for their services, and the last part of the act, that "and for all labor performed in and about such mines," relates to the labor performed in developing and opening up such mines. Can it be said that one who watched the property after it had become idle and abandoned—no longer operated or intended to be operated—is entitled to a lien for his services in so doing and for his services in making collections? We must say, No. In *R. A. G. & S. M. Co. v. Bouscher,* 9 Colo. 385, 12 Pac. 433, the court said:

"But, besides the foregoing services, plaintiff demanded, and the court recognized, a statutory lien for labor as disbursing agent and accountant. Statutes of the kind under consideration are to be construed liberally in favor of the classes sought to be protected thereby. But it would be palpably judicial legislation for courts to extend their provisions so as to include demands not fairly covered by the language used. *Barnard v. McKenzie,* 4 Colo. 251; *Edgar v. Salisbury,* 17 Mo. 271. Hence, while liens are allowed for many kinds of labor that the authorities term 'incidental,' such incidental labor must be directly done for, and connected with, or actually incorporated into, the building or improvement. It will not do to extend the protection given to services indirectly and remotely associated with the construction work. The cook who prepares food for the employees, the blacksmith who shoes the horses or repairs the implements in use, and all similar contributors to the enterprise, are not among the favored workmen. See *McCormick v. Los Angeles,* 40 Cal. 185. The keeping of defendant's books, and disbursement of its funds, were

matters of great importance; but we cannot declare such services within the purview of the statute."

Likewise the Supreme Court of California, in the case of *Williams v. Hawley,* 144 Cal. 97, 102, 77 Pac. 762, 764, says:

"It was during this term that the plaintiff was employed by Clinton, on behalf of Wheeler, to serve as watchman for the mine. No work whatever had been done upon the mine for many years, and Wheeler did not attempt to do any work therein, either in the way of operation or development. The only work done by the plaintiff, according to his own testimony, was to look after a house situated on or near the mining claim, and take care of a few tools, of the value of about $200, situated in the house. He performed no manual labor whatever and did not work at all upon the mine. The statute in force at the time the contract was made with respect to liens of this character was as follows: 'Any person who performs labor in any mining claim or claims has a lien upon the same, and the works owned and used by the owners for reducing the ores from such mining claim or claims, for the work or labor done. * * * Under the circumstances shown in this case, and in view of the terms of the statute, we are of the opinion that the contracts were not competent or sufficient for that purpose, and that they should have been excluded. It is clear that the statute implies that the labor to be performed upon any mining claim, and for which a lien is given, is labor performed in the course of the actual work of mining or development in the mining claim, and that it does not include the services of a watchman engaged in caring for the mine while it is lying idle."

Construing section 4007, *supra,* as we do, we cannot say that the plaintiff in error is entitled to a lien for the services alleged to have been performed by him, for we are of the opinion that his services were not performed in any effort to open or develop a mine as is provided in

the statute in order for him to be entitled to a lien upon the property thus developed or opened or worked upon by him during the progress of such work in the development or opening of the said property. From a review of the authorities we are of the opinion that the trial court was correct in holding that the plaintiff in error was not entitled to a lien on this property from either viewpoint; and the judgment is therefore affirmed.

By the Court: It is so ordered.