RIFFE PETROLEUM CO., Appellant,

v.

GREAT NATIONAL CORP.,
INC., Appellee.

No. 51163.

Supreme Court of Oklahoma.

July 22, 1980.

Eagleton, Eagleton & Owens, Inc., by Larry D. Henry, Tulsa, for appellant.

Larry B. Lucas, Poteau, for appellee.

OPALA, Justice:

The issue presented by this appeal is whether the protection afforded coal mine workers by the provisions of 42 O.S.1971 § 148[1] extends to one who performs services which, while perhaps essential to the mining process, take place at a location other than the mining site and after the coal has been removed from beneath the ground. We hold that the work for which the lien is sought to be asserted here constitutes neither "developing and opening up" the mine nor qualifies as an activity "in and about" the coal mine within the meaning of § 148. No lien may hence be impressed upon the equipment in suit.

The Riffe Petroleum Company[2] [creditor], which lent money to Ben Haskins Company, Inc. [Haskins] and Holly Coal Company, Inc. [Holly], obtained a security interest in a caterpillar loader [loader] and in other equipment not subject to this suit. The Great National Corporation [GNC] provided Holly with the use of its mining equipment [a tipple] so that Holly's extracted coal could be prepared for marketing. A tipple is a stationary piece of equipment which cleans, screens, sizes and loads coal into railroad cars. As the tipple was located at GNC's mine some fourteen miles away—Holly had to deliver its coal by truck to GNC's site for process and loading with the use of the tipple. Haskins-owned[3] equipment was used to place the coal in the tipple.

At about the time Haskins and Holly defaulted on amount owed to their creditor, Holly also defaulted on its obligation to GNC. Less than a month after Holly last used the tipple, GNC filed notice of its lien upon the Haskins-owned loader.[4]

The action, from which this appeal is taken, was brought by creditor who sought to recover possession of the loader as an item of equipment included in its security interest.[5] GNC was made a party-defendant because it was known to lay lien claim to the loader.[6] The activity for which GNC seeks to impress its lien is the value of the

1. All citations to § 148 refer to 42 O.S.1971 § 148. The terms of § 148 provide:
 "All miners and other employees engaged in the work of *developing and opening up coal mines*, sinking of shafts, or construction of slopes or drifts, the driving of entries, mining in coal, and every mechanic, builder, artisan, workman, laborer or other person who performs any work or labor *in and about* such mines, shall have as security for such work and labor performed, a lien therefor upon the buildings, machinery, equipment, inside or outside, income, franchises, leases or subleases and all other appurtenances and all property of the person, owner, agent, firm or corporation owning, constructing or operating such mine or mines, and all property in their possession or under their control, or permitted by the owner to be used in the construction or operation thereof, superior or paramount, whether prior in time or not, to that of all persons interested in such mines as managers, lessees, sublessees, operators, mortgages, trustees and beneficiaries under trust or owners." [Emphasis added]

2. Appellant herein and plaintiff below.

3. There is some doubt—immaterial to this appeal—with respect to identity of the owner of the caterpillar loader in question.

4. The procedure prescribed for filing liens on mining property is contained in 42 O.S.1971 §§ 148–150.

5. At the time of Holly's default, GNC had possession of the loader. It remains in its possession.

6. There were several defendants to the action filed by creditor. Some of these made claims to the loader in dispute. Only one of these defendants, GNC, is a party to this appeal.

work performed with the use of the tipple on Holly's coal. Creditor moved for summary judgment against GNC, arguing that services provided by GNC's tipple are not lienable under § 148. GNC similarly pressed for summary judgment. The trial court ruled in favor of GNC. Creditor brings this appeal. At issue is the correctness of trial court's construction of § 148.

## I

 Liens can be created either by contract or by law.[7] A statutory lien, such as that created by § 148, stands in derogation of the common law. It must hence be strictly confined to the ambit of the enactment giving it birth.[8] A lien that is not provided for by the clear language of the statute cannot be created by judicial fiat. The terms prescribed by statute cannot be ignored. They are the measure of the right and of the remedy.[9] Neither may a lien be created out of a sense of fairness if the terms of the statutory lien are found too narrow and have not been met.[10] Once it has been determined that a lien did in fact attach to the property because the claimant

is within the protected class, enforcement provisions may be liberally applied.[11]

GNC urges us to view the § 148 lien strictly in process-related terms and without reference to a geographical perimeter of the mine situs. It contends that within the meaning of § 148 coal is not "developed" until it is in a marketable form, i. e. after it has been processed through the tipple.

 The ascertainment of legislative intent is the cardinal rule of statutory construction.[12] The provisions of § 148 do not address themselves to the *entire mining process* nor to the preparation of coal for the market. The purpose of the lien—as indicated by the unmistakable language of the enactment—is to protect those who expend labor in the "construction", "development" and "opening" of the mine when this is done "in and about" the mine situs.[13] In the absence of a contrary definition of the common words used in the act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance.[14]

7. 42 O.S.1971 § 6; *Martin Coal and Coke Co. v. Brewer*, 185 Okl. 169, 90 P.2d 653, 654 [1939] (Overruled on another issue by subsequent legislative action.); *American Tank and Equipment Co. v. T. E. Wiggins, Inc.*, 170 Okl. 504, 42 P.2d 115, 117 [1934]; *McEwen Mfg. Co. v. Anadarko Producers' Gas and Oil Co.*, 115 Okl. 127, 241 P. 493, 494 [1925]; *Harriss v. Parks*, 77 Okl. 197, 185 P. 470, 471 [1920]; Z. Jones, A Treatise of the Law of Liens § 1554 [3rd ed. 1914].

8. "The lien laws of the State will be liberally construed by this court to effect the purposes intended by the Legislature but in so doing the court cannot create a lien not provided for by law or created by contract." *Taylor v. B. B. & G. Oil Co.*, 207 Okl. 288, 249 P.2d 430 [1952]. *Browning v. Allied Helicopter Service, Inc.*, 309 F.2d 712, 715 [10th Cir. 1962]; *Martin Coal and Coke Co. v. Brewer*, supra note 7, 90 P.2d at 655; *American Tank and Equipment Co. v. T. E. Wiggins, Inc.*, supra note 7; *Harriss v. Parks*, supra note 7; S. Phillips, A Treatise on the Law of Mechanics Liens on Real and Personal Property § 16 [3rd ed. 1893].

9. *Taylor v. B. B. and G. Oil Co.*, supra note 8, 249 P.2d at 433; *Young v. J. A. Young Machine & Supply Co.*, 203 Okl. 595, 224 P.2d 971, 973 [1950]; *McEwen Mfg. Co. v. Anadarko Produc-*

ers' *Gas and Oil Co.*, supra note 7, 241 P. at 494; *Interurban Construction Co. v. Central State Bank of Kiefer*, 76 Okl. 281, 184 P. 905, 910 [1919].

10. *Phoenix Mutual Life Ins. Co. v. Harden*, Okl., 596 P.2d 888, 890 [1979]; *National Cash Register Co. v. Stockyards Cash Market*, 100 Okl. 150, 228 P. 778, 780 [1924]; *Eberle v. Drennan*, 40 Okl. 59, 136 P. 162, 165 [1913].

11. *Taylor v. B. B. and G. Oil Co.*, supra note 9, 249 P.2d at 432; *Martin Coal and Coke Co. v. Brewer*, supra note 7, 90 P.2d at 655; *American Tank and Equipment Co. v. T. E. Wiggins, Inc.*, supra note 7; *McEwen Mfg. Co. v. Anadarko Producers' Gas and Oil Co.*, supra note 7.

12. *Stemmons, Inc. v. Universal C. I. T. Credit Corp.*, Okl., 301 P.2d 212, 216 [1956].

13. *Hunt v. Stribling*, 57 Okl. 507, 157 P. 741, 742 [1916] and *Peaceable Creek Coal Co. v. Jackson*, 26 Okl. 1, 108 P. 409, 413 [1910].

14. *W. S. Dickey Clay Mfg. Co. v. Ferguson Investment Co.*, Okl., 388 P.2d 300, 304 [1963]; *Stemmons, Inc. v. Universal C. I. T. Credit Corp.*, supra note 12; *Applications of Oklahoma Turnpike Authority*, Okl., 277 P.2d 176, 182

The word "development"—as commonly understood in the mining industry—means an activity necessary to make a deposit of ore accessible for extracting or mining.[15] The word "develop" is defined as "free from that which enfolds or envelops." As applied to mining, this means "to uncover or bring forth that which a mine produces."[16] "Developing" is an activity with a meaning separate and distinct from "producing" or "mining". The latter two words—in the context used—denote the process of extracting rough ore from the earth.[17] A mine must be fully developed before the ore can be produced or be brought to the surface.

▓ The provisions of § 148 clearly reflect an intent to confine lienable rights to a geographical perimeter of the mine situs. This is done by the inclusion of the unmistakable phrase "in and about such mines." These words have been held to have a localizing effect.[18] A "mine" is defined as a "pit or excavation in the earth from which mineral substances are taken" or as an "ore deposit."[19] Although GNC presses for a much broader definition of coal mine—that which is contained in the Code of Federal Regulations[20]—we find no warrant in § 148 for giving that enactment a vastly expanded sweep.

▓ We next consider GNC's asserted status as a § 148 lienholder. Its allegedly

lienable service, which consisted of preparing extracted coal for market, was performed clearly dehors the mine perimeter. The process used—although perhaps a step necessary for the marketing—was not part of "opening up, development or construction" of a coal mine. Nor was it incidental to coal extraction operations. Rather, it constituted that phase of processing which occurs—in point of time—after the coal has already been "mined". In short, the tipple-phase of Holly's operations cannot be regarded as fully integrated into a continuous, on-site mining process that is inseparable—or at least not easily separable—from extraction so as to be viewed as incidental to it.

The character of non-integrated services GNC relies on does not fall within the description of activity lienable under § 148. Neither were these activities "in and about" the Holly mine.[21] Performed at GNC's mine rather than at Holly's premises, the tipple service clearly fails to meet the perimeter restrictions of § 148.

GNC further contends that since both federal and Oklahoma mining inspection officials consider the tipple process to be part of the mining operations for inspection purposes, it should also be so considered under § 148. The statute in question clearly does not afford a lien to all persons who provide

[1954]; *McCarter v. Pitman*, 82 Okl. 78, 198 P. 303, 305 [1921].

**15.** *Santa Fe Pacific Railroad Company v. United States*, 378 F.2d 72, 76 [7th Cir. 1967]; *State Tax Commission v. Eagle Picher Mining and Smelting Co.*, 73 Ariz. 372, 241 P.2d 804, 808 [Ariz.1952]; A Dictionary of Mining, Mineral and Related Terms, U. S. Dept. of the Interior, Bureau of Mines, p. 313 [1968].

**16.** Websters New International Dictionary Second Edition, p. 713 [1934]; *W. S. Hatch Co. v. Public Service Commission*, 3 Utah 2d 7, 277 P.2d 809, 813 [1954].

**17.** *W. S. Hatch Co. v. Public Service Commission*, supra note 16.

**18.** *Iott v. Mosby*, 126 Kan. 294, 268 P. 109 [1928]; *Janzen v. Phillips*, 73 Wash.2d 174, 437 P.2d 189 [1968].

**19.** Webster's Third New International Dictionary, p. 1437 [1961].

**20.** A coal mine is defined as "an area of land and all structures, facilities, machinery . . . used in . . . the work of preparing the coal so extracted. . . ." Mine Safety and Health Admin., U. S. Dept. of Labor, Federal Coal Mine Health and Safety Act of 1969, 30 C.F.R. § 90.2(a).

**21.** "'About', as used in a will devising to testator's sons all the corn and other articles which should be 'in and about' his mill, or 'in and about' his dwelling house, did not include a cargo of wheat consigned to testator, which was in transitu at the time of his death, since such cargo could not be considered 'in and about', or in the vicinity of, the mill. *Lane v. Sewell*, 43 Law J.Ch. 378". Quoted in 1 Words and Phrases 212 [1958] under the word "About".

labor essential to the marketing of coal. The legislative language is too narrow for the judicial interpretation GNC desires. We therefore hold that GNC can impress no lien under § 148 for the value of tipple-related services.

We need not decide here whether § 148 would authorize a lien for the performance of pre-extraction or extraction-related services which occur off the premises of a mine. Nor need we even consider whether there can be a lien under § 148 for post-extraction services performed within the mine perimeter. *What we do decide today is that GNC's post-extraction activity dehors the mine situs perimeter will not support a lien claim.*

GNC's contention that the creditor has no rights in the loader because its security interest failed to attach need not be answered here. That question may be raised only by one who has an interest in the equipment. GNC must recover on the strength of its own claim—not upon the weakness of the adversary's demand.[22]

## II

Lastly, we consider creditor's application for the allowance of an attorney's fee and for recovery of costs in this court. A successful appellant may recover taxable court costs "of course". 12 O.S. 1971 § 978.[23] Taxation of costs must be sought by motion in a post-decisional stage of appeal but before mandate is issued.[24] In an action to foreclose a security interest—which is one "to enforce a lien" within the meaning of 42 O.S.1971 § 176—the successful party in the trial court may be allowed a reasonable attorney's fee to be taxed as costs. An additional award may be made to the prevailing party for its counsel services on appeal.[25] Since the record before us is less than sufficient for proper appraisal of all factors to be considered, we direct that the trial court determine, on remand, the fair value of the creditor's legal services in this court and allow it as costs in the action.

Summary judgment for GNC is reversed; the trial court is directed to enter summary judgment in creditor's favor,[26] together with costs taxable below, including a reasonable counsel fee for appellate services.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, DOOLIN and HARGRAVE, JJ., concurring.

SIMMS, J., concurring in result.

---

22. *Dierks v. Walsh*, 203 Okl. 113, 218 P.2d 920, 925 [1950]; *Allgood v. Wetsel*, Okl., 275 P.2d 317, 319 [1954].

23. The terms of 12 O.S.1971 § 978 provide: "When a judgment or final order is reversed, the plaintiff in error shall recover his costs, including the costs of the transcript of the proceeding, . . . and when reversed in part and affirmed in part, costs shall be equally divided between the parties."

24. Rule 32, Rules of the Supreme Court of Oklahoma, 12 O.S.1971, Ch. 15, App. 1; *National Educators Life Insurance Co. v. Apache Lanes, Inc.*, Okl., 555 P.2d 600, 602 [1976]. If the expense in procuring transcript is sought to be added, the amount expended must be shown by court reporter's affidavit.

25. *Associates Financial Services, Inc. v. Millsap*, Okl., 570 P.2d 323, 326 [1977]; *Parkhill* *Truck Co. v. Reynolds*, Okl., 359 P.2d 1064, 1068 [1961].

26. Creditor sought a partial summary judgment against GNC. Since the claim to a lien under § 148 was the only issue involved between the parties and there were no fact controversies, a summary judgment against GNC may be rendered. "Partial summary judgments" or interlocutory summary adjudications are used when some of the facts in the case remain in controversy while others are not. When summary judgment is sought against one of several defendants and there are no controversies as to the material facts between the movant and the party against whom judgment is to be rendered, summary judgment is proper. *Reams v. Tulsa Cable Television, Inc. and Fike*, Okl., 604 P.2d 373 [1979].