Dear Commissioner Fields:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does 40 O.S.Supp. 2008, § 165.2[40-165.2], which provides for the payment of wages due an employee by electronic means, allow employers to compel employees to accept such payment by (1) direct deposit, or (2) payroll cards or other electronic means?
 2. If employers may compel payment of wages by electronic means, would such employers still be required to give employees a written or printed itemized statement of deductions for each pay period under 40 O.S. Supp. 2008, § 165.2[40-165.2]?
 3. If employers may compel payment of wages by electronic means, would such employers still be required to issue payment in full, without discount?
Your first question requires the interpretation of language added to Section 165.2 of Title 40, in 2006, to provide the following:
 Every employer in this state shall pay all wages due the employees, other than exempt employees and employees of nonprivate foundations qualified pursuant to 26 U.S.C. 509(a)(1) and 26 U.S.C. 170(b)(1)(A)(vi), at least twice each calendar month on regular *Page 2 
paydays designated in advance by the employer. State, county and municipal employees, exempt employees, and employees of nonprivate foundations qualified pursuant to 26 U.S.C. 509(a)(1) and 26 U.S.C. 170(b)(1)(A)(vi) shall be paid a minimum of once each calendar month. The amount due such employees shall be paid in lawful money of the United States, including payment by electronic means, and the employee shall not be deemed to have waived any right or rights mentioned in this section because of any contract to the contrary. With each payment of wages earned by such employee, the employer shall issue to such employee a brief itemized statement of any and all deductions therefrom. An interval of not more than eleven (11) days may elapse between the end of the pay period worked and the regular payday designated by the employer. The employer shall be allowed three (3) days after such payday in which to comply with this section.
 No such employer shall issue, in payment of or as evidence of indebtedness due an employee any check, cashier's check, draft, time check, store order, scrip, or other acknowledgment of indebtedness unless the same is payable or redeemable upon demand without discount and for face value in lawful money of the United States.
2006 Okla. Sess. Laws ch. 277, § 2 (amending 40 O.S.Supp. 2005, § 165.2[40-165.2]) (emphasis added).[1]
Your question is whether the addition of "including payment by electronic means" permits an employer to compel an employee to accept payment of wages (1) by direct deposit, or (2) payroll debit cards or other electronic means.
Information submitted with your request for an official Attorney General Opinion states that an operator of a retail electronic payment network seeks to introduce its payroll systems to the State of Oklahoma.[2] You accordingly seek guidance related to electronic wage payment under Oklahoma law.
 THE ELECTRONIC FUND TRANSFER ACT
To answer your question, we first look to the Electronic Funds Transfer Act ("EFTA"), which is the federal law that governs consumer electronic transfers of funds, including electronic employee wage payments.See 15 U.S.C. §§ 1693 — 1693r (West, Westlaw through June 2009). In this regard, the EFTA expressly preempts state law governing consumer electronic fund transfers as follows: *Page 3 
 [The EFTA] does not annul, alter, or affect the laws of any State relating to electronic fund transfers, except to the extent that those laws are inconsistent with the provisions of [the EFTA], and then only to the extent of the inconsistency.
Id. § 1693q. The EFTA was enacted in 1978 and its implementing regulation, Regulation E, became effective March 30, 1979.See Electronic Fund Transfers [hereinafter Regulation E], 12 C.F.R. §§ 205 — 205.18 (West, Westlaw current through Sep. 2009).
In passing the EFTA, Congress found that the "use of electronic systems to transfer funds provides the potential for substantial benefits to consumers." 15 U.S.C. § 1693(a). Congress also found that the application of existing consumer protection legislation to electronic transfers is "unclear, leaving the rights and liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined." Id. In passing the EFTA, Congress sought to establish those rights and responsibilities, but declared that its primary objective was for "the provision of individual consumer rights." Id. § 1693(b).
The EFTA applies to electronic fund transfers as defined by the EFTA. "Electronic fund transfer" is defined in the EFTA to mean:
 (6) [A]ny transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone. Such term does not include —
 (A) any check guarantee or authorization service which does not directly result in a debit or credit to a consumer's account:
 (B) any transfer of funds, other than those processed by automated clearinghouse, made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and which is not designed primarily to transfer funds on behalf of a consumer;
 (C) any transaction the primary purpose of which is the purchase or sale of securities or commodities through a broker-dealer registered with or regulated by the Securities and Exchange Commission; *Page 4 
 (D) any automatic transfer from a savings account to a demand deposit account pursuant to an agreement between a consumer and a financial institution for the purpose of covering an overdraft or maintaining an agreed upon minimum balance in the consumer's demand deposit account; or
 (E) any transfer of funds which is initiated by a telephone conversation between a consumer and an officer or employee of a financial institution which is not pursuant to a prearranged plan and under which periodic or recurring transfers are not contemplated;
 as determined under regulations of the Board[.]
Id. § 1693a. In its simplest form, an electronic fund transfer has three components: (1) a transfer of funds, (2) that is initiated by electronic means, and (3) debits or credits a consumer account.Voeks v. Pilot Travel Ctrs.,560 F. Supp. 2d 718, 720 (E.D. Wis. 2008).
Pursuant to Section 1693b of the EFTA, the Board of Governors of the Federal Reserve System has prescribed a regulation implementing the EFTA. Many of the substantive measures governing the electronic payment of wages for employees are found in this regulation, referred to as "Regulation E."
 I. Does 40 O.S.Supp. 2008, § 165.2[40-165.2], which provides for the paymentof wages due an employee by electronic means, allow employersto compel employees to accept such paymentby (1) direct deposit, or (2) payroll cards or other electronicmeans?
 PAYMENT OF EMPLOYEE WAGES BY ELECTRONIC TRANSFER/COMPULSORY USE
The EFTA and Regulation E contain a provision, identified as the compulsory use provision, that prohibits employers from requiring employees to establish accounts at a specific institution for the receipt of electronic wage payments.
In this regard, the EFTA provides the following:
 No person may —
 . . . . *Page 5 
 (2) require a consumer to establish an account for receipt of electronic fund transfers with a particular financial institution as a condition of employment or receipt of a government benefit.
15 U.S.C. § 1693k (emphasis added). Regulation E contains essentially the same prohibition.See 12 C.F.R. § 205.10(e)(2).
The EFTA defines the term "financial institution" to mean:
 (8) [A] State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer[.]
15 U.S.C. § 1693a (emphasis added). The EFTA defines the term "account" to mean:
 (2) [A] demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement[.]
Id. Pursuant to its regulatory authority, the Board has further defined "account" in Regulation E to mean:
 [A] demand deposit (checking), savings, or other consumer asset account (other than an occasional or incidental credit balance in a credit plan) held directly or indirectly by a financial institution and established primarily for personal, family, or household purposes.
12 C.F.R. § 205.2(b)(1). In addition, the Board has expanded the definition of "account" to include a "payroll card account," which is defined as follows:
 [A] "payroll card account" . . . is an account that is directly or indirectly established through an employer and to which electronic fund transfers of the consumer's wages, salary, or other employee compensation (such as commissions), are made on a recurring basis, whether the account is operated or managed by the employer, a third-party payroll processor, a depository institution or any other person.
Id. § 205.2(b)(2). Regulation E defines "person," as used in the EFTA, as follows: *Page 6 
 Person means a natural person or an organization, including a corporation, government agency, estate, trust, partnership, proprietorship, cooperative, or association.
Id. § 205.2(j). Regulation E finally defines "consumer" as "a natural person." Id. § 205.2(e).
In applying the defined terms contained in the compulsory use provisions of the EFTA and its implementing Regulation E, we find that neither private employers nor government agencies may condition employment on an employee's establishment of an "account" as defined in the EFTA and Regulation E, which includes a payroll card account for the receipt of an electronic fund transfer, at a particularinstitution. But what the EFTA and Regulation E do not tell us is whether the corollary is authorized. If an employer does notrequire the employee to establish an "account" for the receipt of electronic funds at a particular financial institution, but rather allows the employee to select the depository institution he/she desires, may the employer then compel the electronic transfer of funds to that "account" as a condition of employment? Part of the answer to this question is found in official staff interpretations which supplement Regulation E, as discussed below.
 (1) DIRECT DEPOSIT
Pursuant to Section 915 of the EFTA (15 U.S.C. § 1693m(d)(1)[3]), the Board of Governors of the Federal Reserve System has designated the director and other officials "duly authorized" to issue at their discretion official staff interpretations of the EFTA's implementing regulations. 12 C.F.R. pt. 205, app. C; see Official Staff Interpretations, 12 C.F.R. pt. 205, supp. I.
In addressing the preauthorized account transfers of Section 205.10 of Regulation E, including the compulsory use provision, the staff has interpreted language regarding electronic fund transfers in payroll transactions to provide the following:
 1. Payroll. An employer (including a financial institution) may not require its employees to receive their salary by direct deposit to any particular institution. *Page 7 An employer may require direct deposit of salary by electronic means if employees are allowed to choose the institution that will receive the direct deposit. Alternatively, an employer may give employees the choice of having their salary deposited at a particular institution (designated by the employer) or receiving their salary by another means, such as by check or cash.
12 C.F.R. pt. 205, supp. 1 ¶ 10(e)(2)(1) (emphasis added). It is clear from this language interpreting the implementing regulations that an employer may require direct deposit of salary by electronic means to an account as defined by the EFTA and Regulation E, as long as the employee is allowed to choose the depository financial institution. Alternatively, if the employer chooses the financial institution for direct deposit by electronic fund transfer, then the employer must allow the employee to receive his/her salary by cash or check. While these prescriptions would appear to include direct deposit to a payroll card account, the EFTA, Regulation E, and the Official Staff Interpretations treat electronic transfers to payroll card "accounts" differently.
 (2) PAYROLL CARD ACCOUNTS AND OTHER ELECTRONIC MEANS OF WAGE PAYMENTS
In your request for an Attorney General Opinion, you provided information from a vendor of payroll card accounts that promotes such accounts as a flexible payment alternative for employees without traditional bank accounts.[4] The Federal Reserve Board, in promulgating its amendment to Regulation E and the Official Staff Interpretations to cover payroll card accounts for the payment of employee wages, describes such accounts and access to them as follows:
 Payroll cards have become increasingly popular with some employers, financial institutions, and payroll service providers as a means of providing a consumer's wages or other recurring compensation payments — assets that the consumer is able to access and spend through an access device that provides functionality comparable to a debit card. Typically, an employer will arrange with a bank or a third-party service provider to make available to its employees a magnetic stripe-backed card; this card accesses an account (or subaccount) assigned to the individual employee. Each payday, the employer credits this account for the amount of the employee's compensation instead of providing the employee with a paper check or making a direct deposit of salary to the employee's checking or deposit account. The employee then can use the payroll card to withdraw the funds at an ATM and to make purchases at POS (and possibly get cash back). Some payroll cards may offer features such as convenience checks and electronic bill payment. Payroll cards are often marketed to employers as a cost-effective means of providing wages to *Page 8 
employees who lack a traditional banking relationship. For "unbanked" consumers, payroll card products can serve as substitutes for traditional transaction accounts at a financial institution.
Electronic Fund Transfers,71 Fed. Reg. 51437, 51438 (2006 WL 2480319) (Aug. 30, 2006) (amending 12 C.F.R. pt. 205, supp. I).
We already noted that a "payroll card account" is an account, such as that described above to which employee wages or other compensation may be deposited electronically.See 12 C.F.R. § 205.2(b)(2). Under Regulation E, the rules governing payroll card accounts and access to them are found in Section 205.18 (disclosure requirements), and in the Official Staff Interpretations applicable to that section. In this regard, the interpretation provides:
 1. Issuance of access device. Consistent with § 205.5(a), a financial institution may issue an access device only in response to an oral or written request for the device, or as a renewal or substitute for an accepted access device. A consumer is deemed to request an access device for a payroll card account when the consumer chooses to receive salary or other compensation through a payroll card account.
12 C.F.R. pt. 205, supp. I ¶ 16(b)(1), § 205.18(a) (emphasis added). "Access device" is defined in Section 205.2 of the Regulation E to mean:
 (a)(1) [A] card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers.
Id. In addition to the restrictions provided in the Official Staff Interpretations, access to consumers' accounts is also restrained by the EFTA itself, as follows:
 (a) Prohibition; proper issuance
 No person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than —
 (1) in response to a request or application therefor; or
 (2) as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor. *Page 9 
15 U.S.C. § 1693i (emphasis added).[4] Because an employee cannot be compelled to obtain a payroll access device unless he/shechooses to receive salary through a payroll card account, it appears that an employer may not compel an employee to accept wages or salary by means of a payroll card account and access device. This view is confirmed by the Federal Reserve Board in its promulgation of certain amendments to Regulation E, as set forth in the following paragraph.
When the Board of Governors of the Federal Reserve System amended Regulation E and the Official Staff Interpretations to cover payroll card accounts established directly or indirectly through an employer, the Board considered whether such accounts fell within the compulsory use provisions of the EFTA. See 71 Fed. Reg. 51442. In this regard, the Board stated:
 The final rule includes comment 18(a) — 1 as proposed to clarify that a financial institution may issue an access device for a payroll card account only in response to an oral or written request for the device, or as a renewal or substitute of an accepted access device. See § 205.5(a). The comment further clarifies that a consumer is deemed to request an access device when the consumer chooses to receive his or her compensation through a payroll card account. The compulsory use prohibition in § 205.10(e) would not be violated as long as a job applicant is not required to establish a payroll card account as a condition of employment.
 One commenter asked the Board to clarify whether an employer may include an unactivated payroll card with materials provided to employees about the terms and conditions of the payroll card account. Such a procedure would not violate Regulation E, provided that the terms and conditions for issuing an unsolicited access device as provided under § 205.5(b) are satisfied and the consumer retained the option to receive compensation by means other than the payroll card account.
Id. (emphasis added). In cases where Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of laws, and such interpretations and applications are published in the Federal Register, the United States Supreme Court has found an unmistakable congressional decision to treat administrative rulemaking and interpretations as authoritative. See Ford Motor Credit Co. v. Milhollin,444 U.S. 555, 567-68 (1980). The Board's comments in promulgating its final rule show a clear determination that a violation of the EFTA and Regulation E is avoided as long as an employee is not compelled to accept his or her wages through electronic payroll card *Page 10 
accounts and access devices. We therefore conclude that under the EFTA and implementing Regulation E, an employer may not require employees to accept payment of wages by deposits to payroll card accounts accessible through payroll cards or by other electronic access devices. We turn now to Oklahoma statutory provisions to conclude our inquiry with respect to your first question.
 EFTA AND PREEMPTION
We began our discussion of the EFTA by noting that the EFTA governs consumer electronic transfers of funds to and from a consumer account. In this regard, the EFTA preempts state law governing consumer electronic fund transfers to the extent that those laws are inconsistent with the EFTA and then only to the extent of the inconsistency. See 15 U.S.C. § 1693q. A state law is consistent with the EFTA if it affords a consumer greater protection than that afforded by the EFTA. See id.
Regulation E provides, for purposes of our inquiry, standards for determinations of inconsistency where state law "[r]equires or permits a practice or act prohibited by the federal law[.]" 12 C.F.R. § 205.12(b)(2)(i).[5] Therefore, to answer your *Page 11 
first question, we must determine whether Oklahoma laws authorizing payment of sums due an employee by electronic means permit a practice or act prohibited by federal law.
We first noted in our discussion that in 2006, 40 O.S.Supp. 2005, § 165.2[40-165.2] was amended as follows:
 The amount due such employees shall be paid in lawful money of the United States, including payment by electronic means, and the employee shall not be deemed to have waived any right or rights mentioned in this section because of any contract to the contrary. *Page 12 
2006 Okla. Sess. Laws ch. 277, § 2 (emphasis added). "The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute." City of Durant v. Cicio,50 P.3d 218, 221 (Okla. 2002). "In the absence of a contrary definition of the common words used in the act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance."Riffe Petroleum Co. v. Great Nat'l Corp.,614 P.2d 576, 579 (Okla. 1980). In considering the terms used in this statute, we find that "means" is defined in the third edition of the American Heritage Dictionary as "[a] method, a course of action, or an instrument by which an act can be accomplished or an end achieved." Id. at 841. Therefore, the phrase "including payment by electronic means" is added to describe a "method" of payment authorized under the law.[6] This provision of law does no more than authorize this payment method
generally. See 40 O.S.Supp. 2008, § 165.2[40-165.2]. It does not provide any further parameters for electronic payments. See id.
Accordingly, on its face, it neither "[r]equires [n]or permits a practice or act prohibited by the federal law[.]" See 12. C.F.R. § 205.12(b)(2)(i). To interpret the amended language as permitting a practice or act prohibited by the federal law would be rendering it preempted and useless. "Statutes must be read to render every part operative and to avoid rendering it superfluous or useless." Comer v. Preferred Risk Mut. Ins. Co.,991 P.2d 1006,1014
n. 35 (Okla. 1999). We therefore conclude that under 40 O.S.Supp. 2008, § 165.2[40-165.2], the Legislature has authorized only those means of electronic payments that are authorized under federal law. See id.;15 U.S.C. §§ 1693 —1693r.
 FAIR LABOR STANDARDS ACT
We found that under the EFTA and 40 O.S.Supp. 2008, § 165.2[40-165.2], authorizing payment of wages by electronic means, an employer may compel direct deposit for the payment of wages to an employee's account, other than a payroll card account, as a condition of employment if the employee is allowed to choose the financial institution to which the deposit is made. But the Memorandum of Law attached to your Opinion request states that "[d]irect deposit and payroll cards do not appear to fall within [the] definition" of negotiable instrument, leading you to conclude that if they are not negotiable instruments, compulsory electronic wage payments would violate the Fair Labor Standards Act, 29 U.S.C. §§ 201 — 219.[7] See Wage Payments Under the Fair Labor Standards Act of 1938, 29 C.F.R. § 531.27(a) (West, Westlaw *Page 13 
through July 17, 2009). In this regard, you refer to regulations promulgated by the United States Department of Labor which require the payment of wages by certain employers to be "in cash or negotiable instrument payable at par" with certain exceptions not applicable here. You question whether this requirement excludes direct deposit and payroll card accounts for the payment of wages by employers.[8]
We do not find it necessary to analyze the provisions of the Fair Labor Standards Act ("FLSA") in the context of electronic wage payments. The FLSA was enacted in 1938 establishing, among other things, minimum wage and maximum hour requirements for industries engaged in commerce or in the production of goods for commerce.[9]
The regulation implementing the provisions of the FLSA governing the payment of minimum wages and maximum hours, sections 6 and 7 of the FLSA, was passed in 1967. See 32 Fed. Reg. 13575 (codified as amended at 29 C.F.R. § 531.27).
We previously noted that the EFTA was passed in 1978 and its implementing regulations became effective in 1979, almost 40 years following the passage of the FLSA and a decade after the FLSA implementing regulations. At the time of the passage of the EFTA, Congress was presumed to have been well aware of the FLSA and its implementing regulations. See Nat'l Res. Def. Council v. U.S.EPA, 437 F. Supp. 2d 1137, 1163 (C.D. Cal. 2006). Nevertheless, Congress, through the EFTA and its implementing regulation, authorized the payment of wages to employees by electronic means. If a conflict exists as you have suggested, conflicting statutes should be interpreted so as to give effect to each but to allow a later enacted, more specific statute to control over a more general statute with regard to the topic at hand. See Food DrugAdmin. v. Brown Williamson Tobacco Corp.,529 U.S. 120, 143 (2000).
Congress has found in enacting the EFTA that the use of electronic transfers of funds provides for substantial benefits to consumers including employees. See 15 U.S.C. § 1693a. Therefore, Congress has specifically provided the framework governing such payments within the EFTA. We conclude, therefore, that the EFTA governs the payment of wages to employees by electronic means and no violation of the FLSA occurs with EFTA-authorized payment of wages.
 II. If employers may require payment of wages by electronic means,would such employers still be required to give employees a writtenor printed itemized statement of deductions for each pay periodunder 40 O.S.Supp. 2008, § 165.2[40-165.2]? *Page 14 
You next ask whether an employer is required to give employees a written or printed statement of deductions for each pay period if the employees are paid by electronic means.
Title 40 O.S.Supp. 2008, § 165.2 [40-165.2] provides that "[w]ith each payment of wages earned by such employee, the employer shall issue to such employee a brief itemized statement of any and all deductions therefrom." Id. You advised that the Oklahoma Department of Labor has long interpreted this provision to mean the statement must be in written or printed form, and cannot be merely a website or database accessed electronically by the employee.[10]
No administrative rules promulgated by the Oklahoma Department of Labor formally interpret this provision of law. See380:1-1-1 — 70-11-14.
We find that the provision of law at issue requires that the employer "shall issue . . . a brief itemized statement of any and all deductions" from the wages earned.See 40 O.S.Supp. 2008, § 165.2[40-165.2]. We earlier noted that, "In the absence of a contrary definition of the common words used in the act we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance." Riffe Petroleum Co., 614 P.2d at 579. With regard to this statute, the term "issue" is defined inMerriam-Webster as "to put forth or distribute usually officially." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/issue (last visited Oct. 15, 2009). "Statement" is defined as "a report of facts."Id. at http://www.merriam-webster.com/dictionary/statement. We conclude that this provision of law requires an affirmative act of the employer to distribute to the employee an itemized wage statement. The form the delivery takes will depend upon the capability of the employee to receive it. The employer's provision of the statement by e-mail to the employee is permissible under the law as long as the employee provides an e-mail address. But merely placing the statement on a website where the employee has to retrieve it is not permissible. *Page 15 
 III. If employers may require payment of wages by electronic means,would such employers still be required to issue payment in full,without discount?
You last ask whether an employer who implements compulsory electronic payment of wages to employees must issue payment in full, without discount. We first frame our discussion within the parameters of direct deposit to a consumer-chosen account, because that is the only compulsory electronic payment method currently authorized by the EFTA. In this regard, we find our answer in 40 O.S.Supp. 2008, § 165.2[40-165.2], which in pertinent part provides as follows:
 No such employer shall issue, in payment of or as evidence of indebtedness due an employee any check, cashier's check, draft, time check, store order, scrip, or other acknowledgement of indebtedness unless the same is payable or redeemable upon demand without discount and for face value in lawful money of the United States.
Id. (emphasis added). "The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute." See City of Durant, 50 P.3d at 221. "Where the language of a statute is clear and unambiguous, the language will be given its plain meaning." Humphries v. Lewis,67 P.3d 333, 335 (Okla. 2003). Under a plain reading of the statute, irrespective of the method of payment for the debt owed an employee, the payment must be payable or redeemable without discount and for face value in lawful money of the United States. We therefore conclude that if an employer requires payment of wages due an employee by electronic direct deposit, the funds received by the employee must be redeemable upon demand, without discount, in lawful money of the United States, without the employee's having to pay a fee to redeem or receive such funds.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The payment of wages due an employee by electronic means is governed by the federal Electronic Fund Transfer Act ("EFTA") (15 U.S.C. §§ 1693 — 1693r). See 15 U.S.C. § 1693q (West, Westlaw current through June 2009).
 2. The regulation implementing the EFTA [hereinafter Regulation E], (12 C.F.R. §§ 205 — 205.18) and the Official Staff Interpretations supplementing Regulation E (12 C.F.R. pt. 205, supp. I) provide additional authority in the application of the EFTA to electronic wage payments. See Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 567-68 (1980); 15 U.S.C. §§ 1693b, 1693m. *Page 16 
 3. The EFTA, Regulation E, and Official Staff Interpretations supplementing Regulation E prohibit an employer from requiring an employee to establish an account for the receipt of electronic funds at a particular institution as a condition of employment. See 15 U.S.C. § 1693k; Regulation E, 12 C.F.R. pt. 205, supp. I ¶ 10(e)(2)(1) (West, Westlaw current through July 2009). However, an employer may require direct deposit of salary by electronic means if employees are allowed to choose the financial institution that will receive the direct deposit. See id.
 4. If an employer chooses the financial institution for direct deposit of wages by electronic means, then the employer must allow the employee to alternatively receive his or her salary by cash or check. See id.
 5. An employee cannot be compelled to receive salary through a payroll card account or obtain an access device to gain access to an electronic fund deposited by an employer to a payroll card account. See 12 C.F.R. pt. 205, supp. I ¶ 16(b)(1), § 205.18(a); 15 U.S.C. § 1693i; Electronic Fund Transfers, 71 Fed. Reg. 51437, 51438 (2006 WL 2480319) (Aug. 30, 2006) (amending 12 C.F.R. pt. 205, supp. I).
 6. The EFTA governs payment of wages to employees by electronic means and no violation of the Fair Labor Standards Act ("FLSA") occurs with EFTA-authorized payment of wages. See Food Drug Admin. v. Brown Williamson Tobacco Corp., 529 U.S. 120, 143 (2000).
 7. Title 40 O.S.Supp. 2008, § 165.2[40-165.2] requires an employer to issue to each employee a brief itemized wage statement of any and all deductions from wages earned. Id. An employer is not restricted in the method of issuing a wage statement as long as the method of delivery places no burden on the employee in order to receive the statement. See id.
 8. If an employer requires payment of wages by direct deposit, the funds received by the employee must be redeemable upon demand, without discount, in lawful money of the United States. See 40 O.S.Supp. 2008, § 165.2[40-165.2]. No fee may be assessed against the employee for redemption of such funds. See id.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA *Page 17 
DOROTHY BROWN ASSISTANT ATTORNEY GENERAL
[1] Title 40 O.S.Supp. 2008, § 165.2[40-165.2] is amended effective November 1, 2009, to provide for an employer to reimburse an employee for any fees or costs associated with an employer's bank's refusal to honor the payroll check. See
2009 Okla. Sess. Laws ch. 164, § 1. The amendment does not affect the analysis or conclusions contained in this Opinion.
[2] See letter from Paul Russinoff, Vice President, Visa USA, Inc. to Bill Settle, Gen. Counsel, Okla. Dep't of Labor, at 1 (Apr. 20, 2009) (on file with author) attached to letter from Lloyd L. Fields, Comm'r, Okla. Dep't of Labor, to Drew Edmondson, Okla. Attorney General (June 24, 2009) (on file with author) (addressing the nature of the retail electronic payments network's operations).
[3] The EFTA provides:
 No provision of [Section 1693m (civil liability)] or section 1693n [criminal liability] of this title imposing any liability shall apply to —
 (1) any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System duly authorized by the Board to issue such interpretations or approvals under such procedures as the Board may prescribe therefor[.]
Id. (emphasis added).
[4] See footnote 2.
[4] Regulation E, 12 C.F.R. § 205.5(a) mirrors the prohibition contained in the Act.
[5] In its entirety Regulation E, Section 205.12(b)(2), provides standards for determination of inconsistency where state law:
 (i) Requires or permits a practice or act prohibited by the federal law;
 (ii) Provides for consumer liability for unauthorized electronic fund transfers that exceeds the limits imposed by the federal law;
 (iii) Allows longer time periods than the federal law for investigating and correcting alleged errors, or does not require the financial institution to credit the consumer's account during an error investigation in accordance with § 205.11(c)(2)(i); or
 (iv) Requires initial disclosures, periodic statements, or receipts that are different in content from those required by the federal law except to the extent that the disclosures relate to consumer rights granted by the state law and not by the federal law.
 Id.
[6] Irrespective of the payment method authorized by this added language, the payment must be redeemable in lawful money of the United States as follows:
 No such employer shall issue, in payment of or as evidence of indebtedness due an employee any check, cashier's check, draft, time check, store order, scrip, or other acknowledgement of indebtedness unless the same is payable or redeemable upon demand without discount and for face value in lawful money of the United States.
40 O.S.Supp. 2008, § 165.2[40-165.2] (emphasis added).
[7] See Memorandum of Law, at pp. 2-3, attached to letter from Lloyd L. Fields, Comm'r, Okla. Dep't of Labor, to Drew Edmondson, Okla. Attorney General (June 24, 2009) (on file with author) (setting forth issues related to the payment of wages electronically and the Fair Labor Standards Act).
[8] See n. 7.
[9] See
Pub.L. No. 676 §§ 1 — 19, 52 Stat. 1060-1069 (codified as amended in scattered sections of 29 U.S.C. §§ 201 — 219).
[10] The Memorandum of Law attached to your Opinion request, at page 4, advises that some employers who offer electronic wage payments also seek to provide electronic wage statements of deductions to employees. See n. 7 *Page 1