¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Does the prohibition against seller-imposed surcharges on cardholders who elect to use a credit card as a form of payment in lieu of payment by cash, check or similar means, provided in 14A O.S. 2001, § 2-417, of the Uniform Consumer Credit Code, apply to all sales transactions or only to consumer credit sales and transactions?
¶ 1 Your question arises from certain language contained in the Uniform Consumer Credit Code ("UCCC"), 14A O.S. 2001 Supp. 2009, §§ 1-101 — 9-101, which may be viewed as ambiguous. The issue is whether the language in Section 2-417 of the UCCC is to be applied broadly to encompass all sales transactions of whatever kind, or to be applied more narrowly to only consumer credit sales and transactions.
 Section 2-417 of the Uniform Consumer Credit Code
¶ 2 The statute in question, 14A O.S. 2001, § 2-417[14A-2-417], simply states, "No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check or similar means." Id. (emphasis added). A term that is key to understanding the meaning of Section 2-417 is "sales transaction." The term "sales transaction" is neither defined in the UCCC nor qualified or limited in some way in Section 2-417. While the plain language of Section 2-417 appears to apply broadly to any sales transaction, the section is a part of the UCCC, which is limited to consumer credit transactions. However, our analysis does not end here because "[t]he ascertainment of legislative intent is the cardinal rule of statutory construction." RiffePetroleum Co. v. Great Nat'l Corp., 614 P.2d 576, 579 (Okla. 1980). To determine what meaning was really intended by the Legislature in its choice of wording of Section 2-417, we must look beyond the plain language of that section to other provisions of the UCCC and general law.
 Uniform Consumer Credit Code
¶ 3 Section 1-102(1) provides that the UCCC "shall be liberally construed and applied to promote its underlying purposes and policies."Id. (emphasis added). Those "underlying purposes and policies" according to Section1-102(2) of the UCCC, in pertinent part are:
 (a) to simplify, clarify and modernize the law governing retail installment sales, consumer credit, small loans and usury;
 (b) to provide rate ceilings to assure an adequate supply of credit to consumers;
 (c) to further consumer understanding of the terms of credit transactions and to foster competition among suppliers of consumer credit so that consumers may obtain credit at reasonable cost[.]
Id. In other words, the purpose of the UCCC under Section 1-102(2) is to regulate consumer credit transactions, not all sales transactions. Consistent with such a limited purpose, Article 2 of the UCCC, § 2-101, states, "This article shall be known and may be cited as Uniform Consumer Credit Code-Credit Sales." Id. The title of Article 2 of the UCCC specifies that the contents of that article apply only to consumer credit sales, not all sales. Also consistent with the UCCC's limited purpose is Article 2, 14A O.S. 2001, § 2-104[14A-2-104] that defines the term "consumer credit sale" in pertinent part as:
 (1) [A] sale of goods, services or an interest in land in which
 (a) credit is granted by a person who regularly engages as a seller in credit transactions of the same kind;
 (b) the buyer is a person other than an organization;
 (c) the goods, services or interest in land are purchased primarily for a personal, family or household purpose;
 (d) either the debt is payable in installments or a credit service charge is made; and
 (e) with respect to a sale of goods or services, the amount financed does not exceed Forty-five Thousand Dollars ($45,000.00).
 (2) Unless the sale is made subject to this act [UCCC] by agreement (Section 2-601), "consumer credit sale" does not include
 (a) a sale in which the seller allows the buyer to purchase goods or services pursuant to a lender credit card or similar arrangement[.]
Id. The UCCC-defined term "consumer credit sale" is thus more narrow in scope than is the undefined term "sales transaction" used in Section 2-417. As to whether any particular sales transaction constitutes a "consumer credit sale" is a question of fact that cannot be answered by an official Attorney General Opinion. See 74 O.S. 2001, § 18b[74-18b](A)(5). Article 2 of the UCCC utilizes the term "consumer credit sale" in the first sentence of Section 2-401, stating, "This part [of the UCCC] applies to consumer credit sales and consumer leases." Id.
(emphasis added). Collectively, the pertinent provisions of the UCCC presented herein, Sections 1-102, 2-104 and 2-401, all relate to consumer credit transactions in particular rather than sales transactions in general. Another provision, Section 1-104, describes the UCCC itself as being a general act "intended as a unified coverage of its subject matter," i.e. consumer credit transactions. Section 2-417, being an integral part of UCCC Article 2, is likewise limited in scope to consumer credit transactions only.
 House Bill No. 1342
¶ 4 The statute in question, Section 2-417, was not part of the UCCC as originally adopted by the Oklahoma Legislature in 1969. See 1969 Okla. Sess. Laws ch. 352. Section 2 of House Bill No. 1342 ("Bill"), was one of two amendments to the UCCC contained in the Bill. See 1977 Okla. Sess. Laws ch. 135, § 2 (codified at 14A O.S.Supp. 1977, § 2-417[14A-2-417]). The title of the Bill selected by the Legislature was as follows: "AN ACT RELATING TO THE CONSUMER CREDIT CODE; PROVIDING THAT CERTAIN DISCOUNTS SHALL NOT CONSTITUTE A CREDIT SERVICE CHARGE UNDER CERTAIN CIRCUMSTANCES; PROHIBITING THE IMPOSITION OF SURCHARGES FOR THEUSE OF CREDIT CARDS; DIRECTING CODIFICATION; AND DECLARING AN EMERGENCY." 1977 Okla. Sess. Laws ch. 135 (emphasis added). The pertinent language of the Bill's title refers to the UCCC, and a related prohibition on imposing surcharges for the use of credit cards.
¶ 5 According to the Oklahoma Supreme Court in Kratz v. Kratz,905 P.2d 753, 756 (Okla. 1995), "[t]he title to an Act is a valuable aid in its construction and may be considered in determining legislative intent." Id. In the situation presented here, the title of the Bill is a valuable aid because it evidences legislative intent to narrow or limit the meaning of the contents of the Bill to that of the UCCC and related consumer credit transactions. In its discussion of the importance of the title of a legislative bill in Oklahoma City v. Brient, 114 P.2d 459, 460
(Okla. 1941), the court stated, "We have often held that the subject expressed in the title fixes a limit on the scope of the Act." Id. In this case, the subject expressed in the title of the Bill of which Section 2-417 was a part, are the UCCC and related consumer credit transactions. Accordingly, the Bill's title fixes a limit on the scope of the Bill in this instance, to that of the UCCC and its related consumer credit transactions. In Excise Board v. Lowden, 116 P.2d 700, 702 (Okla. 1941), the court, quoting State ex rel. Ledbetter v. Pitts, 277 P. 918, 919
(Okla. 1928) stated, "The Legislature itself, having selected a restrictive title, is bound by it." Id. In the situation presented here the title of the Bill selected by the Legislature is restricted to the UCCC and related consumer credit transactions, and the Legislature is bound by it.
¶ 6 In Oklahoma, the title of an enacted legislative bill is important for another reason, namely compliance with Article V, Section 57 of the Oklahoma Constitution. In pertinent part, Article V, Section 57, of the Oklahoma Constitution, states: "Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."Id. The Oklahoma Supreme Court combined the requirements of Article V, Section 57 and a number of the court's previously stated statutory construction concepts together in Poafpybitty v. Skelly Oil Co.,394 P.2d 515, 517 (Okla. 1964), by stating:
 In view of our constitutional provision requiring that the subject of a legislative Act shall be clearly expressed in its title, Art. 5, Sec. 57, Okl. Const., the Legislature is bound by its selection of a restrictive title and such title has the effect of limiting the text of an Act. The title itself will be construed with reference to the language employed in it alone and not in the light of what the body of the Act contains.
Id. Thus, despite the apparent plain language meaning of Section 2 of the Bill (current version at 14A O.S. 2001, § 2-417[14A-2-417]) to the contrary, the language of the title of the Bill limits its application, as well as that of Section 2-417 to the UCCC and related consumer credit transactions.
¶ 7 It is, therefore, the official Opinion of the Attorney Generalthat:
 1. The purpose of the Uniform Consumer Credit Code ("UCCC"), 14A O.S. 2001 Supp. 2009, §§ 1-101 — 9-101, is to regulate consumer credit transactions, not all sales transactions.
 2. Article V, Section 57 of the Oklahoma Constitution provides that "[e]very act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title."
 3. Section 2-104 of the UCCC defines the term "consumer credit sale" in pertinent part as:
 (1) [A] sale of goods, services or an interest in land in which
 (a) credit is granted by a person who regularly engages as a seller in credit transactions of the same kind;
 (b) the buyer is a person other than an organization;
 (c) the goods, services or interest in land are purchased primarily for a personal, family or household purpose;
 (d) either the debt is payable in installments or a credit service charge is made; and
 (e) with respect to a sale of goods or services, the amount financed does not exceed Forty-five Thousand Dollars ($45,000.00).
 (2) Unless the sale is made subject to this act [UCCC] by agreement (Section 2-601), "consumer credit sale" does not include
 (a) a sale in which the seller allows the buyer to purchase goods or services pursuant to a lender credit card or similar arrangement[.]
 4. Whether any particular sales transaction constitutes a "consumer credit sale" is a question of fact that cannot be answered by an official Attorney General Opinion. See 74 O.S. 2001, § 18b(A)(5).
 5. The subject expressed in the title of House Bill No. 1342, as selected by the Legislature, is restricted to the UCCC and its related consumer credit transactions. See 1977 Okla. Sess. Laws ch. 135. The Legislature is bound by its selection of the restricted title that has the effect of limiting the text of Section 2-417 to the UCCC and its related consumer credit transactions only, and not to all sales transactions of whatever kind.
 6. The prohibition against seller-imposed surcharges on cardholders who elect to use a credit card as a form of payment in lieu of payment by cash, check or similar means, provided in 14A O.S. 2001, § 2-417[ 14A-2-417] of the UCCC, applies to consumer credit sales only.
W.A. DREW EDMONDSON Attorney General of Oklahoma
BRYAN NEAL Assistant Attorney General *Page 1